David C. KIPER, Appellant,

v.

STATE of Indiana, Appellee.

No. 381S90.

Supreme Court of Indiana.

March 3, 1983.

Susan K. Carpenter, Public Defender of Indiana, David P. Freund, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant David C. Kiper was found guilty by a jury of burglary resulting in bodily injury, attempted rape while armed with a deadly weapon, and battery resulting in bodily injury. He was subsequently sentenced by the Warrick Superior Court to concurrent terms of 25 years for the burglary, 25 years for the attempted rape and one (1) year for the battery. Appellant now directly appeals and raises the following issues for our consideration:

1. whether Appellant's convictions were supported by sufficient evidence;

2. whether the trial court erred by denying Appellant's Motion to Discharge Jury Panel and Motion to Change Court Bailiff; and

3. whether the trial court erred by giving certain instructions.

The evidence adduced during Appellant's trial shows that on June 14, 1980, the victim, J.K., lived with her two children in an apartment in Newburgh, Indiana. Since the air-conditioner in her apartment was not functioning that night, J.K. had several windows open including one with a ripped screen. Just before dawn, someone rang J.K.'s doorbell and knocked on the door. J.K. awoke and looked through the peephole in the door to find a stranger standing there. The man later peered through the window with the ripped screen. When he finally left, J.K. shut and locked said window. She then watched the man get into a greenish-blue compact station wagon which was parked directly across from J.K.'s apartment. By way of a police conducted photo-showup, J.K. later identified Appellant Kiper as the man at her door. She further identified a picture of his car as the vehicle parked across from her apartment. J.K. watched Kiper drive to a nearby apartment building. He appeared to be checking

the various nameplates as if he were looking for someone in particular. J.K. went back to bed and back to sleep. She was again awakened by her doorbell and loud knocking on her door. It was Kiper. J.K. asked him who he was. Kiper responded that he was looking for Sherry Barnhill. J.K. told him that Barnhill lived downstairs. When J.K. heard knocking downstairs, she went back to bed and to sleep. J.K. was awakened a third time by Kiper standing next to her bed, completely nude except for his socks. Kiper previously had been wearing an orange and white striped shirt. J.K. subsequently found this shirt on her living room floor. J.K. asked Kiper what he was doing in her home. He said he would leave but nonetheless told J.K. to be quiet. J.K. demanded several times that Kiper leave which he did not do. When J.K. reached for her phone, Kiper grabbed a white-handled butcher knife from the top of a nearby cabinet and cut the telephone wire. J.K. tried to stop him but cut her finger on the knife. The knife did not belong to J.K.. J.K. attempted to pound on the wall to alert her neighbors but Kiper began hitting her with his fist. Kiper told her that he was going to have sexual intercourse with her and that she was going to perform fellatio on him. He threatened her with the knife. J.K. told Kiper he was "crazy" and fought him off. Kiper continued to beat J.K. on her face with his fist, causing her nose to bleed. He tore off her blouse and climbed on top of her. At this juncture, J.K.'s minor son came into the bedroom and Kiper told him to leave. J.K. told her son to stay so that he could see what was going on. J.K. finally kicked Kiper with both feet forcing him to fall into a chest of drawers and into a closet. J.K. thereupon ran out of her bedroom and to her front door. J.K. unlocked the latch-lock and attempted to open the door only to discover that Kiper apparently had attached the chain lock. J.K. looked back to notice Kiper quickly putting his jeans on. J.K. jerked the door open, causing the wooden door frame to splinter. She then ran to the neighboring apartment of Wes Mitchell.

Mitchell testified that he was awakened by J.K.'s screaming and banging on his door. She was nude from her waist up and was bleeding from her nose. Mitchell further testified that when he looked outside, he saw a man wearing blue jeans but no shirt run from J.K.'s apartment and around the south end of J.K.'s building. Mitchell took J.K. in, gathered her children and called the police. Mitchell's wife substantiated his testimony. Another neighbor, Elmer Lant, testified that he noticed a man walking around J.K.'s apartment complex who fit the description given to him by the investigating police officers. Lant honked his auto horn which prompted the man to run away. Lant called the police. Through Lant's help, Kiper was subsequently apprehended in the vicinity of J.K.'s apartment complex. Carolyn Lant, Elmer's sister-in-law, testified that she noticed a man fitting Kiper's description hiding in the thicket near where she lived. She watched him as he walked out of the thicket and onto an adjacent highway where he attempted to hitchhike a ride. Being unsuccessful, he went back into the thicket. Still another neighbor, Sherry Key, nee Barnhill, testified that someone opened a closed window to burglarize her apartment while she and her children were away on June 14. The burglar stole a white-handled butcher knife. She also testified that her former husband was Kiper's cousin. The emergency room physician who attended J.K. at St. Mary's Hospital testified that J.K. had bruises on her back, on her breasts and around one eye. Two of her teeth were broken and had to be removed. There also was testimony that Kiper was seen drinking heavily in a local tavern during the evening of June 13.

I

■ Appellant now claims that there was insufficient evidence to sustain the jury verdicts adjudging him guilty of the instant crimes. On appeal, this Court will neither judge the credibility of witnesses

nor reweigh the evidence. We will consider only that evidence most favorable to the State, together with all reasonable and logical inferences drawn therefrom. When substantial evidence of probative value is found to support the jury's verdicts, a conviction will not be set aside. *Neice v. State,* (1981) Ind., 421 N.E.2d 1109, *reh. denied; Cowans v. State,* (1980) Ind., 412 N.E.2d 54. Appellant's arguments do no more than point out alleged conflicts in the evidence pertaining to Appellant's purported intoxication while committing these criminal acts. In Appellant's view, the jury should have believed his intoxication defense. We hold that there was ample direct evidence to justify the jury in finding Appellant guilty beyond a reasonable doubt of all of the crimes for which he was convicted. *Munsey v. State,* (1981) Ind., 421 N.E.2d 1115, *Cowans, supra.*

## II

Prior to commencing *voir dire* of the jury, Appellant filed a Motion to Discharge Jury Panel and a Motion to Change Court Bailiff. Said Motions were filed because the trial court's bailiff, Jean Mahon, was discovered to be the mother-in-law of Michael Phillips, the law partner of S. Anthony Long, the Warrick County Prosecuting Attorney. Appellant asserted that he may be prejudiced by the relationship between the bailiff and the prosecutor since the bailiff has direct contact with the jury. Moreover, he asserted that this relationship constituted an appearance of impropriety. The trial judge denied both Motions. Appellant and the State both agreed that the prosecutor's law partner had nothing to do with the prosecution of criminal cases. Both parties also agreed that Appellant neither knew of any specific wrongdoing by the bailiff nor anticipated any specific wrongdoing.

 Appellant gives no authority for his position. He states that while he has attempted to research the issues presented by this situation, he has not found a single

relevant case and therefore believes that his instant appeal presents a case of first impression in Indiana. The State agrees. No matter what status this case has, the pertinent rule of law is well established. If wrongdoing by any member of a trial court's staff or by any member of a jury prejudices a defendant by denying that defendant a fair and impartial trial, then a trial judge commits reversible error by failing to remedy the wrongful situation. No such prejudice is shown here, however. Appellant concedes that there was no wrongdoing by the bailiff or jury and that none was expected. Furthermore, bailiff's relationship to the prosecutor was not so close as to infer her partiality or potential complicity. The record shows that during *voir dire,* Appellant's counsel did not question any of the jurors on whether or not they knew about the bailiff, the bailiff's relationship to the prosecutor's civil law partner or the possible or actual prejudice that such relationship might have on their judgment of the case. Appellant's counsel also did not ever question the bailiff as to whether her relationship with the prosecutor's civil law partner would interfere with her official duties and her handling of the jury. In fact, Appellant accepted the jury after his extensive *voir dire* of them and therefore waived any objection he had to the jury as it was constituted at that time. *Boone v. State,* (1978) 267 Ind. 493, 371 N.E.2d 708; *Grigsby v. State,* (1978) 267 Ind. 465, 371 N.E.2d 384.

## III

 The State tendered the following as its proposed Final Instruction Number 2:

"The Court further instructs you that you should not indulge in purely speculative doubts, and the bare possibility that the defendant may be innocent does not raise a reasonable doubt. The question of defendant's guilt must be determined by each of you in view of your obligation to act honestly and fairly in weighing the evidence and reaching a decision which your oath imposes."

The trial court gave this instruction to the jury after giving Indiana Pattern Instruction Number 11.01. Said Instruction Number 11.01 advised the jury as follows:

"A 'reasonable' doubt is a fair, actual and logical doubt that arises in your mind after an impartial consideration of all of the evidence and circumstances in the case. It should be a doubt based upon reason and common sense and not a doubt based upon imagination or speculation.

If, after considering all of the evidence, you have reached a firm belief in the guilt of the defendant that you would feel safe to act upon that belief, without hesitation, in a matter of the highest concern and importance to you, then you will have reached that degree of certainty which excludes reasonable doubt and authorizes conviction.

The rule of law which requires proof of guilt beyond a reasonable doubt applies to each juror individually. Each of you must refuse to vote for conviction unless you are convinced beyond a reasonable doubt of the defendant's guilt. Your verdict must be unanimous."

Appellant acknowledges that Final Instruction Number 2 was a correct statement of the law and has been previously approved by the Court of Appeals in *Hartwell v. State,* (1974) 162 Ind.App. 366, 321 N.E.2d 222. Appellant's objection is that Instruction Number 2 unduly emphasized the same legal proposition given in Instruction Number 11.01 and thereby prejudiced him. The State responds that while portions of these two instructions are similar to each other, it was nonetheless proper to give both as they were essentially different. We agree with the State. All phases of the law cannot be depicted in a single instruction. By their very nature, instructions involve a certain repetition when taken as a whole. It is only when instructions are so repetitious as to place an undue emphasis on a particular point that they become improper. *Downer v. State,* (1982) Ind., 429 N.E.2d 953; *Johnson v. State,* (1972) 258 Ind. 683, 284 N.E.2d

517, *on rehearing,* 258 Ind. 692, 288 N.E.2d 553; *Pfeifer v. State,* (1972) 152 Ind.App. 315, 283 N.E.2d 567. Final Instruction Number 2 properly served to explain "reasonable doubt" to the jury. It did not unduly emphasize a particular point so as to prejudice the jury.

■ The following Final Instruction Number 5 was also given to the jury:

"The defense of intoxication is defined by law as follows:

'It is a defense that a person who engaged in the prohibited conduct did so while he was intoxicated, if the intoxication resulted from the introduction of a substance into his body without his consent or when he did not know that the substance might cause intoxication.

Voluntary intoxication is a defense only to the extent that it negates specific intent.

The burden of proof is on the defendant to prove his condition by a preponderance of evidence, if it did, in fact, exist.' "

Appellant concedes that Final Instruction Number 5 was a correct statement of law since it virtually restates the intoxication defense statute. Ind.Code § 35-41-3-5 (Burns Supp.1982). Appellant's objection is that there was no evidence in his case suggesting any possibility that his intoxication resulted from the introduction of a substance into his body without his consent or without his knowing that the substance might cause his intoxication. Appellant's claim is that this Instruction may have misled or confused the jury such that it could not properly consider his intoxication defense. Appellant did proffer a defense of intoxication. Accordingly, we do not think that the trial judge erred by instructing the jury on the intoxication defense with the very language of the intoxication defense statute. Instruction Number 5 did not in any way present to the jury legal principles which were not applicable to the evidence in this case. What Instruction Number 5 did present to the jury was the Indiana intoxication defense law to facilitate the jury's

understanding such that the jury might apply said law to the facts of the instant case if deemed appropriate. Furthermore, a mere assertion, without elaboration or supporting case law, that the jury was misled or confused by the trial court's instruction cannot support such an allegation of error on appeal unless the defect is patently obvious. This Court previously has held.

"Where there can be no doubt as to how a jury could reasonably react to an instruction, and where that reaction could not prejudice the appellant, it cannot be contended that the instruction constitutes reversible error."

*Baker v. Mason,* (1968) 253 Ind. 348, 354, 242 N.E.2d 513, 517. The State's position is well taken that we can reasonably conclude that the jury's reaction to Instruction Number 5 was not prejudicial to Appellant since the jury, by its verdict, rejected Appellant's defense of voluntary intoxication as negating Appellant's criminal intent in this case. We find no error in the tender of this Instruction.

The trial court gave Final Instruction Number 12 which was as follows:

"As the Court has previously instructed you, burglary is a crime of specific intent, that is, the breaking and entering must be done with an intent to commit a felony.

You are further instructed that the intent to commit a felony can be inferred from the time, force and manner of entry if there is no evidence that the entry was made with some lawful intent.

A person may be convicted of burglary if he breaks and enters with the intent to commit a felony even though he does not actually commit a felony when once inside."

Appellant concedes that a burglary conviction may be sustained on appeal against a claim of insufficient evidence even though a defendant committed no felony after making an entry so long as there is evidence to show that the defendant entered with a felonious intent. Appellant likewise concedes that a felonious intent can be inferred from the circumstances surrounding the entry itself. He contends, however, that Instruction Number 12 was not a proper instruction for the jury in his case. He specifically argues that by instructing the jury that a felonious intent can be inferred from the time, force and manner of entry when there is no evidence suggesting a lawful entry, the jury is misled into thinking that a defendant must prove that he entered with a lawful intent in order to negate the presumption of unlawful intent created by the Instruction. Appellant reasons that Instruction Number 12 violates due process because it propounds a presumption which, although not conclusive, has the effect of shifting the burden of persuasion to the defendant. Appellant relies upon *Sandstrom v. Montana,* (1979) 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39, and *Mullaney v. Wilbur,* (1975) 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508. Appellant additionally points out that Instruction Number 12 was misleading and confusing because the State's case was predicated upon proving that Appellant committed the felony of attempted rape while inside of J.K.'s apartment.

In *Sandstrom, supra,* the United States Supreme Court struck down the following instruction:

"The law presumes that a person intends the ordinary consequences of his voluntary acts."

The U.S. Court found this instruction improper because the jury may have interpreted the instruction as a direction to conclusively find a specific intent upon proof of a defendant's voluntary actions unless the defendant proved by some quantum of proof that he did not have that specific intent. The *Sandstrom* instruction was found to shift the burden of proof from the State, where it belongs, to the defendant.

Instruction Number 12 has neither the language nor the effect of the instruction in *Sandstrom.* The jury in Appellant's case was told that they could infer Appel-

lant's intent from the time, force and manner of his entry if there was no evidence that his entry was made with some lawful intent. This properly instructed the jury to consider all of the facts and circumstances of Appellant's entry in addition to any direct evidence indicating Appellant's intent at the time of his entry. This was a proper instruction considering the evidence before the jury which showed that this incident occurred between midnight and daybreak, that Appellant was in the area ostensibly to find another person, that J.K.'s screens were torn, and that Appellant admitted to being in J.K.'s apartment but claimed that he was too intoxicated to form any criminal intent. The jury was not instructed to indulge in any presumption but simply was told that it could make inferences from the facts proved to it by the evidence. We find no error in Instruction Number 12.

■■■ The trial court gave to the jury Final Instruction Number 13 which stated:

"You are hereby instructed that flight of the defendant, or avoidance of arrest beforehand, may be considered by you the jury as evidence of guilty knowledge and upon the issue of guilt of the defendant."

Instruction Number 13 indicated to the jury that it may draw an inference from the fact of defendant's flight. This Instruction is proper where there is sufficient evidence to support the fact that flight occurred. *Roseberry v. State,* (1980) Ind., 402 N.E.2d 1248. Appellant now claims that Instruction Number 13 is faulty because it is worded in such a manner that the fact of his flight is presumed. Instruction Number 13 was not a mandatory one. Furthermore, the form of this Instruction was proper as it had previously been approved by this Court. *Powers v. State,* (1982) Ind., 431 N.E.2d 799; *Wolfe v. State,* (1981) Ind., 426 N.E.2d 647; *Roseberry, supra.*

■■■ The trial court also gave to the jury Final Instructions numbered 8, 10, 13, and 15. Instruction Number 8 directed the jury on the statutory language of burglary resulting in bodily injury and attempted rape while armed with a deadly weapon. It was simply a recitation of Ind.Code §§ 35–43– 2–1, 35–42–4–1 and 35–41–5–1. Ind.Code § 35–41–5–1 is the statute defining attempt crimes. Ind.Code § 35–42–2–1 was also read to the jury to inform it on battery resulting in serious bodily injury or committed by means of a deadly weapon. Instruction Number 10 instructed the jury on what constitutes an attempt crime. Instruction Number 13 further instructed the jury on the requisite elements of an attempt. The two requisite elements are: (1) acting with a criminal culpability, and (2) engaging in actions which constitute a "substantial step" towards the commission of a crime. Instruction Number 15 instructed the jury on the crime of attempted rape as defined by Ind.Code §§ 35–42–4–1 and 35–41–5–1.

Appellant's complaint with respect to these four Instructions is that none define "substantial step" so as to guide the jury in determining when a person has committed an attempted crime. Appellant claims that these Instructions are vague and uncertain. He specifically argues that the Instructions do not give the jury a sufficient definition by which it could make a proper judgment in his case. This issue was decided by this Court in *Zickefoose v. State,* (1979) 270 Ind. 618, 388 N.E.2d 507. We stated therein:

"Our statute clearly sets out the two elements necessary for an attempt to commit a crime as (1) acting with the required culpability, and (2) engaging in conduct that constitutes a substantial step toward commission of the crime. The emphasis in this statute is on what the defendant has already done toward committing the crime and not on what remains to be done. *What constitutes a substantial step must be determined from all the circumstances of each case,* and the conduct must be strongly corroborative of the firmness of the defendant's criminal intent." (emphasis added).

*Zickefoose,* 270 Ind. at 622, 388 N.E.2d at 510. In *Himes v. State,* (1980) Ind., 403 N.E.2d 1377, 1381, we held:

"Where intent is clear, the question of what constitutes a substantial step is a question of fact for the jury."

Black's Law Dictionary 1280 (5th ed. 1979) defines "substantial" as follows:

"Of real worth and importance; of considerable value; valuable. Belonging to substance; actually existing; real; not seeming or imaginary; not illusive; solid; true; veritable. [Citation omitted]. Something worthwhile as distinguished from something without value or merely nominal. [Citation omitted]. Synonymous with material. [Citation omitted]."

This Court has held with respect to what constitutes "substantial evidence":

"We use the word 'substantial' as meaning more than 'seeming or imaginary.'"

*Baker v. State,* (1956) 236 Ind. 55, 60, 138 N.E.2d 641, 644. What is "substantial," therefore, has a well-defined meaning and what constitutes a "substantial step" clearly depends upon a jury's evaluation of the specific facts of any particular case.

The record in Appellant's case shows that the trial court gave preliminary instructions to the jury concerning the charged crimes including attempted rape. Appellant did not object. Moreover, Appellant did not tender any preliminary or final instructions proposing how to instruct the jury on what constitutes a "substantial step" in the commission of an attempt crime. Appellant also did not request that the trial court give a specific instruction of the definition of "substantial step." It is well-settled that any alleged errors stemming from a trial court's instructions are waived by a defendant who does not tender his own correct instructions when the trial court has not instructed as that defendant believes necessary or proper. *Clemons v. State,* (1981) Ind., 424 N.E.2d 113. The trial court committed no error by giving these four instructions to the jury.

Finding no errors indicated by Appellant's appeal, we accordingly affirm the trial court in all things.

GIVAN, C.J., and DeBRULER and PRENTICE, JJ., concur.

HUNTER, J., concurs in result.