Daniel W. STARKS, Appellant,

v.

STATE of Indiana, Appellee.

No. 87S00–8601–CR–20.

Supreme Court of Indiana.

Dec. 29, 1987.

**48**

John   Wissner,   Scales,   Wissner   and Krantz, Boonville, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A consolidated jury trial resulted in two convictions of Theft, a Class D felony, and a finding that appellant was an habitual offender in each case.  Appellant was sentenced to three (3) years, enhanced by thirty (30) years by reason of the habitual offender status on each conviction.

The facts are:  On February 1, 1983, Earl Woodall, manager of Wilson Lumber Company, advised Officer Marvin Heilman of the Indiana State Police that a truck bearing the name "Wilson Lumber Company" was stolen from his residence.  On February 10, 1983, the truck was recovered along with another stolen vehicle in a barn located on property which appellant rented from Donald Kramer.  At approximately the same time, police received telephone calls regarding trucks parked on the property of the Toledo Bible College which had been leased to appellant by John Brooke.  The police conducted a search of this property and recovered numerous stolen vehicles and parts from vehicles.  They also recovered vehicle parts which were buried in the ground.  The owners of the stolen vehicles were contacted and positively identified their property.

Appellant contends the trial court erred in denying his motion for change of judge.  The basis for his motion was an allegation of bias and prejudice.

He alleged that: (1) the trial judge presided in criminal proceedings filed in that court against Betty Starks and Sherry Pearson;  (2) significant pretrial publicity occurred in regard to this case; (3) the trial judge exhibited bias and prejudice toward appellant during the hearing concerning shock probation for Sherry Pearson;  and (4) the trial judge transferred appellant from the Vanderburgh County jail to the Department of Correction based upon findings that appellant represented a substantial threat to police officers and inmates and attempted escape.

■ Appellant merely draws the conclusion that the judge exhibited bias and prej-

udice toward him. There is no allegation that the judge expressed an opinion on the merits of the case. The fact that the trial judge is required to make rulings on preliminary matters in the case at bar and in related cases does not establish that he is biased and prejudiced on the merits of appellant's guilt or innocence. *See Wallace v. State* (1985), Ind., 486 N.E.2d 445.

■ Appellant calls our attention to the exchange between the trial judge and Pearson when she stated she was willing to be a witness against appellant. The judge asked her if her failure to appear on a previous occasion was influenced by appellant. She answered that it was. He asked her if she realized that if she testified against appellant he would not be "favorable for you doing that" and if she understood that should appellant make threats against her she could turn to the prosecutor and the police for aid. Pearson told the judge that appellant had threatened to harm her children on several occasions. The court advised her that there were agencies to help her care for her children. Appellant cites this exchange as proof of the judge's bias and prejudice. We do not so view such an exchange. The judge had a duty to inquire as to the reasons for the witness' failure to appear on a prior occasion, to see that she understood the potential jeopardy she was assuming for herself and her children, and to give her advice concerning protection available to her and her children.

■ Appellant also raises the question of his transfer to the Indiana Department of Correction facility at Plainfield, Indiana, for safekeeping. It is obvious the judge would have to consider appellant to be a security risk. The necessity of making such subjective observations does not imply bias and prejudice. *See Wallace, supra* at 456.

Appellant contends that State's Exhibits Nos. 112 and 113 were improperly admitted because the chain of custody was not sufficiently established. He argues that the red marks appearing on the exhibits had not been explained by proper witnesses.

■ On March 21, 1983, Officer LaVerl Uhde arrived at the Toledo Bible College and dusted for fingerprints. He obtained seventeen latent fingerprints, several of which are set forth in State's Exhibits Nos. 112 and 113. The fingerprints were delivered to the Evansville branch of the Indiana State Police. On September 11, 1984, Officer Marvin Heilman arrested and fingerprinted appellant. Such fingerprints are set forth in State's Exhibit No. 111. On January 15, 1985, Officer Stanley Ford compared State's Exhibits Nos. 112 and 113 with State Exhibit No. 111 and concluded that the latent fingerprints matched those of appellant. At trial, Officer Ford explained that the red marks appearing on State's Exhibits Nos. 112 and 113 were caused by the analysis of the prints both by himself and Officer Biederwolf. The marks indicated the number of points of comparison found in each of the latent impressions.

■ Although a continuous chain of custody must be shown, the State is not required to exclude every remote possibility of tampering. *Rowan v. State* (1982), Ind., 431 N.E.2d 805.

Appellant does no more than raise the possibility of tampering with the evidence. *Russell v. State* (1986), Ind., 489 N.E.2d 955. The testimony of Uhde and Ford establishes a strong chain of custody well within the standards set forth in *Wagner v. State* (1985), Ind., 474 N.E.2d 476.

Appellant contends the trial court erred in admitting the testimony of State's witnesses, John Brooke and Dorothy Brooke, concerning a telephone conversation which allegedly occurred with appellant. He claims the individual making the call was not sufficiently identified as appellant.

On October 30, 1982, John Brooke leased the Toledo Bible College property to appellant. Brooke talked with appellant for approximately one hour when the lease was signed. Later, Brooke drove to the property to speak with appellant concerning a neighbor's complaint. Since appellant was unavailable, Brooke requested that appellant telephone him when he returned. Several days later, appellant telephoned the

Brooke home. Dorothy Brooke answered the call and spoke briefly with appellant.

Just prior to appellant's apprehension, John and Dorothy Brooke received a threatening telephone call during the late evening hours. Mr. Brooke answered the call and Mrs. Brooke listened to the conversation from an extension telephone. They heard the caller exclaim: "If you testify against me, I will blow your head off and I will blow your wife's head off too."

A caller's identity must be established as a foundation for the admission of the content of a telephone call. *Ashley v. State* (1986), Ind., 493 N.E.2d 768. Testimony by a witness that he was familiar with the caller's voice and recognized it in a conversation is sufficient identification. *Id.* Further, the identity of the caller need not be proved beyond a reasonable doubt. Any doubt regarding the credibility of a voice identification goes to the weight of the evidence and not to its admissibility. *Id.*

In this case, Dorothy Brooke positively identified the telephone caller as appellant. She was familiar with appellant's voice since she spoke with him when he returned her husband's telephone call. Moreover, the identity of appellant may be inferred from the circumstances of the calls. Prior to receiving the threatening telephone message, Mr. and Mrs. Brooke spoke with Officer Heilman regarding appellant and the Toledo Bible College property. Also, the local newspaper published an article concerning a "chop shop" operated on the Toledo Bible College premises. We believe the inclusion of these details in the telephone conversation reasonably leads to the inference that the caller was appellant. There is no error.

Appellant contends that impermissibly tainted identification testimony was permitted to be introduced at his trial. To determine whether a particular identification procedure rises to the level of suggestiveness which constitutes reversible error, we must examine the totality of the circumstances pertaining to the witness' opportunity to observe the accused. *Griffin v.*

*State* (1986), Ind., 493 N.E.2d 439. Due process requires suppression of an in-court identification of the accused by a witness when pretrial identification procedures were held under circumstances so suggestive as to give rise to a substantial likelihood of irreparable misidentification. *Dorsey v. State* (1986), Ind., 490 N.E.2d 260.

In December 1982, Donald Kramer leased property located on Noble Chapel Road to appellant. Kramer was in the presence of appellant for approximately forty-five minutes when the lease was signed. In March 1983, the Indiana State Police contacted Kramer regarding the presence of stolen vehicles on the leased property. Although Kramer stated that the lessee was dressed in heavy winter clothing at the time, he nevertheless identified appellant from a photographic array as the lessee of the property.

Prior to testifying at trial, Kramer observed appellant in the hallway and recognized him as the lessee of the property. Kramer then made an in-court identification of appellant. On cross-examination, Kramer admitted that he reviewed a photographic array before trial but maintained that he was not told by police that appellant's photograph was included in the array.

Appellant maintains that Kramer's in-court identification was tenuous and suspect because he was unable to positively identify appellant from the photographic array before trial.

A degree of suggestiveness is inherent in all in-court identifications. Appellant is naturally set apart from everyone else in the courtroom by sitting at the defendant's table with defense counsel. We find that Kramer's identification of appellant was not tainted by impermissibly suggestive pretrial procedures.

Appellant contends the trial court erred by admitting State's Exhibit 208, which was a copy of a lease. At trial, Sherry Pearson, one of appellant's cohorts, testified that she resided with appellant in Godfrey, Illinois, during May 1983. At that time, Pearson assumed the name "Susan Hollowell" while appellant assumed the

name "Melvin Hollowell." Pearson identified State's Exhibit No. 208 as the lease to certain property located at 4860 Alby Street in Godfrey, Illinois. She stated that, although she was sure she signed the name "Susan Hollowell" to the lease, she was unsure whether appellant signed the name "Melvin Hollowell" to the lease. Appellant objected to the admission of the exhibit on the basis of a violation of the best evidence rule since the exhibit was not the original copy of the lease. Appellant also objected that the signatures on the copy of the lease were illegible. The trial court overruled the objections and admitted the exhibits into evidence.

The parties thereafter stipulated to certain testimony of Special Agent Larry Doiron, one of the Illinois State Police Officers who previously testified at the trial. They stipulated that if Officer Doiron were recalled to testify, he would state that on June 23, 1983, he questioned Pearson concerning the rental property. Pearson advised Doiron that she did not sign the lease. Rather, appellant signed the appropriate documents to rent the Godfrey, Illinois, property.

The State then offered State's Exhibit No. 225, the original copy of the lease that had been in the custody of Illinois officials. Appellant's objection to the admission of the exhibit was sustained.

Appellant then moved for a continuance to employ the services of a handwriting expert to examine the signatures on the exhibit against other handwriting in order to impeach the testimony of Pearson. The trial court denied the motion.

■ Appellant does not contest the accuracy or authenticity of State's Exhibit No. 208. His only objection is that the exhibit violates the best evidence rule since a copy of the form was put into evidence instead of the original. Moreover, appellant does not demonstrate how he was prejudiced by the admission of the exhibit. Therefore, we find that any error assigned to its admission is harmless. *See Barker v. State* (1982), Ind., 440 N.E.2d 664.

■ Appellant also argues that the trial court erred by refusing to grant his motion for continuance to obtain a handwriting analysis expert. The granting of a motion for continuance lies within the sound discretion of the trial court and will be reversed only where there is an abuse of that discretion. *Brumley v. State* (1986), Ind., 492 N.E.2d 281. The prosecutor informed defense counsel that all exhibits were available for his review prior to trial. Defense counsel, however, failed to avail himself of the opportunity to have State's Exhibit No. 208 analyzed. The denial of a continuance is not an abuse of discretion when a defendant has failed to exercise due diligence to obtain the information sought prior to trial. *Caccavallo v. State* (1982), Ind., 436 N.E.2d 775. We find no error in the trial court's refusal to grant the motion for continuance.

Appellant contends the trial court erred by allowing testimony regarding his prior criminal activity. On January 22, 1985, appellant filed a motion in limine to preclude the State from presenting evidence regarding his prior criminal convictions. The trial court granted the motion. At trial, State's witness Pearson testified that she corresponded with appellant while she was incarcerated due to her participation in the thefts. During cross-examination, defense counsel offered over twenty letters which Pearson had written to appellant. Defense counsel questioned Pearson at length regarding the contents of each letter. The trial court allowed the Prosecutor, on redirect examination, to question Pearson on matters raised during cross-examination. Pearson testified that: appellant was shot during his arrest in Illinois; appellant and Dennis Cruz were involved with stolen vehicles in Illinois; and appellant was ordered to serve terms of imprisonment in both Missouri and Illinois.

■ Appellant challenges the trial court's ruling which allowed the State, on redirect examination, to question Pearson regarding his prior activity. The scope and extent of redirect examination is within the sound discretion of the trial court. *Kalady v. State* (1984), Ind., 462 N.E.2d 1299. The

ruling of the trial court will not be disturbed absent an abuse of discretion. *Id.* When a party raises a subject on cross-examination, it is permissible for the opposing party to pursue that subject on redirect examination. *Woodford v. State* (1980), 273 Ind. 487, 405 N.E.2d 522. A defendant may not open the door on an issue and have it closed at his convenience. *Fortson v. State* (1978), 269 Ind. 161, 379 N.E.2d 147. The trial court was correct in permitting the redirect examination by the prosecuting attorney.

Appellant contends the trial court erred by denying his request for a continuance in order to subpoena additional witnesses. During cross-examination by defense counsel, State's witness Pearson testified that she was informed by her sister, Janet Biggs, that appellant had threatened to remove Pearson's children from Biggs' home. Appellant then requested a continuance to subpoena witnesses Biggs, Pam Hanigan, Jerry Stark and Lauren Marshall for the purpose of impeaching the testimony of Pearson. The trial court denied appellant's motion.

A ruling on a motion for a continuance, not based upon statutory grounds, is within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. *Parr v. State* (1987), Ind., 504 N.E.2d 1014. To demonstrate an abuse of discretion, appellant must show prejudice resulting from the denial of the continuance. *Laird v. State* (1985), Ind., 483 N.E.2d 68.

■ The record reveals that both the prosecutor and the defense counsel spoke with Biggs regarding her conversations with appellant. Defense counsel refused to stipulate to the telephone conversation. The testimony of witnesses Jerry Stark and Marshall would have been merely cumulative since Michelle Stark previously testified that appellant went to Texas from October to March in 1983 to seek employment. Further, appellant's failure to enunciate the facts to which Hanigan would testify prevents this Court, as it prevented the trial court, from determining whether appellant was in fact prejudiced by the absence of the witness.

Appellant was well aware of the date established for trial. He had ample opportunity to serve the various subpoenas and seek the court's assistance in enforcing them if necessary. *See Rowe v. State* (1983), Ind., 444 N.E.2d 303. Moreover, the motion for continuance was not precipitated by any surprise arising at trial. Defense counsel not only possessed the letters written by Pearson but also cross-examined her regarding her fears for the welfare of her children. We find the trial court did not abuse its discretion when it denied the motion for continuance.

Appellant contends the trial court erred in instructing the jury. Appellant claims the trial court erred when it refused to give his Tendered Instructions Nos. 5 and 6 on the lesser included offense of conversion.

■ This Court applies a two-step analysis to determine whether it was erroneous to refuse instructions on lesser included offenses. First, it must be determined that the lesser offense is included within the crime charged. *Taylor v. State* (1984), Ind., 468 N.E.2d 1378. If the State, through careful drafting of the information, chooses not to charge a lesser offense, then the defendant is not entitled to an instruction on it. *Jones v. State* (1983), Ind., 456 N.E.2d 1025. Second, it must be determined whether the evidence produced at trial warrants submission of the lesser included offense to the jury. *Easley v. State* (1981), Ind., 427 N.E.2d 435.

■ It is clear by the language of the information and by reference to the theft statute that the State intended to charge appellant only with theft. The State has absolute discretion to determine the crime with which the defendant will be charged. *Jones, supra.* The prosecutor chose to charge theft only. The evidence did not deviate from this choice. An examination of the evidence in this case fails to show any evidence of a lesser included offense of conversion. The record clearly supports the trial court's refusal to give appellant's Tendered Instructions Nos. 5 and 6.

■ Appellant claims the trial court erred by refusing his Tendered Instruction No. 4 regarding "missing witnesses" and by giving State's Instruction No. 9 on the same subject. In the present case, Betty. Starks, one of appellant's cohorts, was subpoenaed by appellant to testify on his behalf. Appellant declined to call her as a witness. Prior to trial, the State entered into a plea agreement with Starks whereby the State agreed not to subpoena her as a witness in this case. The "missing witness" instruction is appropriate only when a witness is available to be produced by one party but not by the other. *Bruce v. State* (1978), 268 Ind. 180, 375 N.E.2d 1042, *cert. denied*, 439 U.S. 988, 99 S.Ct. 586, 58 L.Ed. 2d 662.

■ The "missing witness" instruction given by the trial court was appropriate because it demonstrated that Betty Starks was available to be produced by one party but not by the other. As the court's final instruction adequately covered the subject, the trial court was not required to give appellant's tendered final instruction. The trial court did not err by refusing appellant's Tendered Instruction No. 4.

Appellant claims the trial court erred by giving State's Final Instructions Nos. 1 and 6. Appellant argues that the instructions were prosecution-oriented and lacked mutuality.

Final Instruction No. 1, which indicated that acquittal of a guilty defendant arouses contempt for law among the criminal classes, thus weakening the safeguards of society, was proper. This Court approved the instruction in *Murray v. State* (1982), Ind., 442 N.E.2d 1012. We find no error in the giving of the instruction.

■ Final Instruction No. 6 was a correct statement of the law and properly served to explain "reasonable doubt" to the jury. We previously approved the instruction in *Kiper v. State* (1983), Ind., 445 N.E.2d 1353. It is only when instructions are so repetitious as to place an undue emphasis on a particular point that they become improper. *Downer v. State* (1982), Ind., 429 N.E.2d 953. There was no error in giving Instruction No. 6.

Appellant contends the trial court erred by permitting the State to amend the habitual offender information. In the original charge, the State alleged a prior offense as occurring on the 19th of December 1979. During the habitual offender proceeding, the State moved to amend the information by changing the date to the 19th of December 1975. The amendment was permitted.

Appellant alleges such amendment was contrary to Ind.Code § 35-34-1-5 which prohibits the amendment of information that changes the theory or theories of the prosecution. The State maintains the change was merely the correction of a clerical error and did not change the substance of the allegation in the charging instrument.

■ An information may be amended by the prosecutor at any time as long as the defendant is accorded an adequate opportunity to prepare his defense commensurate with such changes. *Daniels v. State* (1983), Ind., 453 N.E.2d 160. The correction of an immaterial defect is permitted. *Jones, supra.*

■ In the case at bar, the amendment did not change the theory of the prosecution, the actual allegations, or the characterization of the offense. It merely corrected a clerical error. There was no error in allowing the amendment.

■ Appellant claims the trial court erred during the habitual offender proceedings by admitting State's Exhibit No. 4, a fingerprint card, over his objection that there was an insufficient chain of custody of the exhibit. State Police Officer Marvin Heilman, through whom the exhibit was offered, stated that he sent the exhibit through the prosecutor's office to Anna Marie Kelly in 1984 and did not see it again until January 31, 1985, which was the last day of the trial. Although a continuous chain of custody must be shown, the State is not required to exclude every remote possibility of tampering. *Burris v. State* (1984), Ind., 465 N.E.2d 171. The rule applies with diminishing strictness to exhibits which are not easily susceptible to altera-

tion, tampering, substitution or fungiblity. *Boyd v. State* (1986), Ind., 494 N.E.2d 284, *cert. denied* (1987), — U.S. —, 107 S.Ct. 910, 93 L.Ed.2d 860. Nonfungible items do not require the high degree of scrutiny that must be applied to fungible items. *Wilson v. State* (1975), 263 Ind. 469, 333 N.E.2d 755. Officer Heilman positively identified Exhibit No. 4 as the defendant's fingerprint card. There is nothing in this record to suggest the exhibit was tampered with in any manner. The trial court did not abuse its discretion by admitting Exhibit No. 4 into evidence.

Appellant contends the trial court erred by refusing to vacate one of the habitual offender counts. The record shows that separate thefts were committed involving separate victims. It was proper for the trial court to enhance each of these sentences due to the habitual offender status. *See Kelly v. State* (1983), Ind., 452 N.E.2d 907.

Appellant claims the trial court erred in first ruling that he was entitled to 617 days credit for his incarceration in Indiana; however, the court qualified this holding by stating that appellant would not receive such credit if he received credit during that same period of time for a sentence being served in Illinois.

Appellant also claims the trial court erred by failing to cite the aggravating circumstances which precipitated the enhancement of his various sentences. The State of Indiana has conceded that the trial court erred in both of these latter instances. The State concedes that this cause should be remanded to the trial court for the statement of the aggravating circumstances, if any, upon which the sentences were enhanced and further, that the court be directed to order credit for the 617 days of incarceration notwithstanding appellant's status as to his Illinois incarceration. The State cites *Ramirez v. State* (1983), Ind.App., 455 N.E.2d 609, *aff'd.*, 471 U.S. 147, 105 S.Ct. 1860, 85 L.Ed.2d 113, *reh'g. denied,* 471 U.S. 1112, 105 S.Ct. 2350, 85 L.Ed.2d 866. This Court concurs with the State's position on these issues.

This cause is therefore remanded to the trial court for the reasons above stated.

SHEPARD, C.J., DeBRULER and PIVARNIK, JJ., concur.

DICKSON, J., concurs except he would instruct the trial court on remand to either provide a proper statement of aggravating circumstances or impose presumptive sentences.