**August TROTTER, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–0002–CR–78

Court of Appeals of Indiana.

Aug. 17, 2000.

Rehearing Denied Oct. 16, 2000.

528

Class D felonies, after attempting to purchase merchandise with another's credit card. At trial, the trial court permitted a juror to question a State's witness about a discrepancy in the evidence and denied the defendant's request for a continuance to investigate the veracity of the witness's answer. We find no error where the court, when faced with a juror question: 1) holds a hearing outside the presence of the jurors to determine the appropriateness of the question and allows counsel to object; 2) asks the witness the question as long as it clarifies evidence and is allowable under the rules of evidence; and 3) asks preliminary questions to a witness to establish whether a witness has sufficient knowledge to answer the question. Finally, the trial court did not abuse its discretion in denying the motion for continuance as the information garnered from the juror's question could have been obtained prior to trial. Finally, we find entry of judgment of conviction on both theft and attempted fraud violates double jeopardy.

### Facts and Procedural History

At approximately 12:30 a.m. on November 18, 1998, Thomas Miller left a pub in downtown Indianapolis and walked to his van. As he neared the vehicle, he noticed that a window had been knocked out and his wallet, containing his driver's license and credit cards, was missing. Miller reported the incident to an officer from the Indianapolis Police Department.

In the early afternoon of the same day, August Trotter went to the Lazarus Department Store at Lafayette Square Mall where he attempted to purchase merchandise with Miller's Lazarus credit card. The sales associate, who waited on Trotter, rang up the sale and asked Trotter for identification. The sales associate informed Trotter that he was required to present identification with the use of any credit card. Because Trotter was unable to do so, the sales associate returned the

Andrew C. Krull, Indianapolis, Indiana, Attorney for Appellant.

Karen Freeman–Wilson, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

### OPINION

VAIDIK, Judge

August Trotter appeals his convictions for theft [1] and attempted fraud,[2] both

---

1. Ind.Code § 35–43–4–2.

2. Ind.Code §§ 35–43–5–4; 35–41–5–1.

credit card to Trotter and voided the sales receipt.

While Trotter was attempting to purchase the merchandise, he was being taped by a security camera that was being monitored by the store's loss prevention detective, Mathew Black. Black called the sales associate after Trotter walked away to obtain the credit card number which had been presented. Following a computer check, Black discovered that the Lazarus card belonged to Thomas Miller and telephoned Miller. Miller stated that he had not authorized anyone to use his Lazarus card. While Black continued to monitor Trotter, the Indianapolis Police Department was notified. Trotter was apprehended by security personnel when he exited Lazarus and brought to the security office. There, the Lazarus credit card was recovered from Trotter. When Indianapolis Police Officer Steven Schafer arrived soon thereafter, he conducted a search incident to arrest and discovered Miller's Montgomery Ward credit card and Bank One Master Card. Record at 237–39.

Trotter was charged with theft and attempted fraud, both Class D felonies. During the jury trial, the State offered the voided sales receipt and the videotape of Trotter into evidence. The time appearing on the videotape, indicating when the purchase was made, was different from the time stamped on the voided sales receipt.

Following the admission of this evidence, one of the jurors submitted a written question asking if the time of day indications on the voided sales receipt and the videotape were consistent. The trial judge discussed the question with the parties out of the jury's hearing. Defense counsel objected to the court's asking the juror's question, arguing that the document spoke for itself, the security guard was not a proper witness to answer the question and the question was beyond the State's questioning of the witness. The trial court overruled the objection and, in the presence of the jury, questioned Black on whether he was "familiar with the time stamping on the receipts" and "the videotape" and knew what the times stamped on the receipt and the videotape were supposed to signify. Record at 226. Black responded that he was familiar with the time displays and stated that they indicated when the events occurred. Thereafter, the court allowed the parties to ask questions relating to the juror's question.

The State then asked Black whether the time on the videotape was accurate. Black responded that it was not, because four days prior to the taping, there was an electrical storm that "wiped out our system." Record at 229. Black further testified that it took about an hour to reboot the system and that the time displayed on the tape reflected the time lapse.

Defense counsel then requested a continuance to investigate the veracity of Black's response concerning the electrical storm. The trial court denied that request, concluding that defense counsel had sufficient opportunity before trial to discover and investigate the time discrepancy. Trotter was found guilty and sentenced to three years on both counts to be served concurrently.

### Discussion and Decision

#### I. Juror Question

Trotter argues that the trial court erred in the way it handled the juror question concerning the discrepancy between the times displayed on the voided sales receipt and the videotape. First, Trotter argues the question should not have been submitted. Trotter also contends that the trial judge improperly questioned the witness about his ability to answer before submitting the question. Finally, Trotter alleges that the trial court erroneously denied his motion for continuance to investigate the witness's answer. We address each argument in turn.

#### A. Proper Juror Question

First, Trotter argues that the juror question should not have been submitted because it "went beyond evidence the

State presented or found relevant to be presented through a specific witness." Appellant's Brief at 8. According to Trotter, the juror question did not seek to clarify evidence already presented by the State but proposed one that had not been considered, and allowed the State "an opportunity to address a hole in its case (i.e., identification) and explain it away." Appellant's Brief at 9.

■ Indiana Evidence Rule 614(d) governs juror questions and provides in relevant part as follows:

> (d) Interrogation by Juror. A juror may be permitted to propound questions to a witness by submitting them in writing to the judge, who will decide whether to submit the questions to the witness for answer, subject to the objections of the parties, which may be made at the time or at the next available opportunity when the jury is not present. Once the court has ruled upon the appropriateness of the written questions, it must then rule upon the objections, if any, of the parties prior to submission of the questions to the witness.

The rule makes evident by its language that not all juror questions are proper and that a trial judge must determine whether the question is appropriate after hearing objections from the parties. However, the rule does not otherwise state what an appropriate question is. Prior cases which have discussed the use of juror questions, however, have stated that a proper question is one which allows the jury to understand the facts and discover the truth. *See Matheis v. Farm Feed Const. Co.*, 553 N.E.2d 1241, 1242–43 (Ind.Ct.App.1990) ("The point of permitting the jurors to resolve their questions was to aid them in their understanding of the facts and search for the truth."); *Carter v. State*, 250 Ind. 13, 15–16, 234 N.E.2d 650, 651–52 (1968) (noting that jurors, by asking questions, obtain an understanding of the issues and evidence, learn the facts and discover the truth). The determination of whether a question is offered for a proper purpose

necessarily requires an examination of the substance of the question. The trial court's decision of whether a juror question is for the purpose of discovering the truth is afforded broad discretion. *Dowdy v. State*, 672 N.E.2d 948, 953 (Ind.Ct.App. 1996), *reh'g denied, trans. denied.*

■ Here, one of the jurors, apparently after noticing a discrepancy in the time listed on the sales receipt and the time displayed on the videotape, submitted a question, asking whether the time of day indications were consistent. Without clarification, the jury would have had before it two inconsistent times which tended to show that the person on the video tape was not the same person who approached the sales associate. By allowing the juror's question to be addressed, however, the jury was able to better understand the evidence already before it and to discover whether the person who approached the sales associate was the same person in the video tape. Because this evidence led to discovery of the truth, it was a proper question.

■ In reaching this conclusion, we acknowledge as Trotter contends, that allowing the question to be propounded benefited the State because it clarified a discrepancy in the evidence. However, we disagree with Trotter that merely because a juror question clarifies evidence to the benefit of one party, the question should not be given. Indeed, in most cases where clarification of the evidence is necessary, one of the parties will benefit. Rather, the overriding concern is whether the question allows the jury to better understand the evidence and discover the truth. To adopt Trotter's reasoning would prevent the jury from performing its fact-finding duties and would essentially contravene our supreme court's decision to allow juror questions. *See Lawson v. State*, 664 N.E.2d 773, 780 (Ind.Ct. App.1996) (noting that by including a rule of evidence allowing for juror questions, our supreme court must have found such ability necessary), *trans. denied.*

■ Finally, we do not mean to say that every juror question which leads to the discovery of the truth or aids in the understanding of the evidence must be submitted. Not only must the answer clarify evidence for the jury but it also must be admissible under our rules of evidence. *See, e.g., Dowdy,* 672 N.E.2d at 953 (concluding that trial court properly concluded that juror was not permitted to ask witness if defendant had prior charges against him). In this case, Trotter does not contend that the witness's answer would have been inadmissible under our rules of evidence and we do not find that it was. Therefore, the trial court's decision to submit the juror question was not an abuse of discretion.

### B. Court's Ability to Ask Foundational Questions

■ Trotter's second claim concerns the trial court's method of determining whether a juror question should be submitted to a witness and, in particular, whether a trial judge is permitted to ask foundational questions of the witness to ensure that the witness has sufficient knowledge to answer the question. According to Trotter, the trial judge should not be permitted to ask foundational questions to establish whether a witness has sufficient knowledge because, by doing so, the court encroaches upon the prosecutor's duties and assumes an adversarial role.[3]

Again, Indiana Evidence Rule 614(d) is silent on this issue. Other than requiring a court to determine the appropriateness of a question, the rule does not discuss how that determination should be made and in particular, whether preliminary

questions concerning a witness's knowledge are permitted. Further, we were unable to locate any cases discussing the appropriateness of such questions in determining whether to submit a juror question.

■ Nonetheless, we find guidance in Indiana Evidence Rule 614(b) which permits trial courts to question witnesses and the cases decided before and after adoption of the rule. With regard to questions propounded by a court, the cases reveal that such questioning is permitted if the court needs the requested information to rule intelligently on a matter, as long as the questioning is done in an impartial manner and does not influence the jury improperly with the judge's own contentions. *See Griffin v. State,* 698 N.E.2d 1261, 1265 (Ind.Ct.App.1998) (stating that the trial court may question witnesses to promote clarity as long as judge does not assume an adversarial role), *trans. denied; Colee v. State,* 75 Ind. 511, 514–15 (1881) ("The court would not, of course, be warranted in assuming the duties of counsel, but has a right when . . . for the purpose of ruling intelligently upon a question, an explanation is needed, or a fuller answer required, to ask questions of the witness.").

■ The reason for allowing court questions applies equally for purposes of determining whether a juror question is appropriate. In this case, the trial court needed to question the witness about his knowledge of the time displays to establish that he was able to answer the juror question concerning the discrepancy. Thus, the discretion afforded a trial court in determining the appropriateness of a juror

---

3. In his brief, Trotter notes that trial counsel objected to the juror question because the witness was not qualified to answer. *See* Appellant's Brief at 6–7; record at 223–24 (indicating defense counsel's objection that "I don't know if the witness is the appropriate person to answer questions about the time that it was stamped or it was printed off the cash register receipt o[r] the time that appears on the video."). *Trotter also points out that the trial court decided to propound some

preliminary questions to the witness in an attempt to determine the witness's ability to answer the question. Although on appeal Trotter challenges the trial court's decision to propound the preliminary questions, he does not develop an argument regarding the trial court's decision that the witness had sufficient knowledge to answer. Therefore, we limit our review to the appropriateness of the trial court's method.

question under Indiana Evidence Rule 614(d) necessarily includes the discretion to question a witness about the ability to answer.

█ Finally, because the purpose of the questions is limited to the Indiana Evidence Rule 614(d) determination, the trial court does not improperly take on an adversarial role in propounding the questions, even if the court lays a foundation for the witness to answer. We have previously concluded that a trial court does not abuse its discretion by asking questions which ultimately aid a party in laying a foundation for an exhibit. In *State v. Covell*, 580 N.E.2d 704, 707 (Ind.Ct.App. 1991), the defendant sought to admit some photographs into evidence when the State objected for lack of foundation. The trial court then asked the defendant what the photographs represented and whether the representations were accurate. *Id.* On appeal, the State argued that the trial court assumed an adversarial role when it essentially laid a foundation for the admission of the evidence. *Id.* We disagreed, noting that a trial court may intervene in the fact-finding process to promote clarity and concluded that the trial court's intervention was neutral and did not impeach or discredit any witness. *Id.* As in *Covell*, the trial court intervention was neutral and did not impeach or discredit any witnesses. The trial court did not abuse its discretion by asking the witness preliminary questions regarding his knowledge of the time displays.

### C. Motion for Continuance

Finally, we find no error in the court's refusal to grant Trotter's motion for a continuance. Trotter argues that he should have been allowed a continuance to investigate Black's answer that an electri-

cal storm, four days before the taping, affected the time displayed on the video.

█ We review the denial of a motion for a continuance on non-statutory grounds for an abuse of discretion. *Starks v. State*, 517 N.E.2d 46, 51 (Ind.1987). In *Starks*, our supreme court concluded that the trial court did not abuse its discretion in denying a defendant's request for continuance to obtain a handwriting analysis expert to examine signatures appearing on a lease. *Id.* The *Starks* court reasoned that the lease was available for review prior to trial, but that the defendant failed to use due diligence in having the exhibit analyzed. *Id.*

█ As in *Starks*, Trotter had an opportunity prior to trial to examine both the sales receipt and the video tape to discover the discrepancy and to investigate the reasons for the discrepancy. Although Trotter argues that he had difficulty in obtaining the video tape from the State and that the State should have produced the tape earlier, Trotter does not suggest that he did not have an opportunity to review it prior to trial. The trial court was within in its discretion to deny a continuance.

### II. Double Jeopardy

█ Trotter argues his convictions for theft and attempted fraud violate Indiana's Double Jeopardy Clause.[4] Specifically, he argues that the same evidence was used to convict him of both charges.

█ In *Richardson v. State*, 717 N.E.2d 32 (Ind.1999), our supreme court set forth a two-part test for analyzing double jeopardy claims under our state constitution. In particular, our supreme court established that two or more criminal offenses violate our double jeopardy clause if with respect to either the statutory elements of the charged offenses or the actual

4. The State contends that Trotter waived this argument by failing to refer to or set forth a separate analysis under the Indiana Constitution. However, Trotter cites as authority *Wise v. State*, 719 N.E.2d 1192 (Ind.1999),

which applied the Indiana Double Jeopardy analysis set forth in *Richardson v. State*, 717 N.E.2d 32 (Ind.1999). Thus, Trotter has sufficiently raised his Indiana Double Jeopardy claim.

evidence used to convict, the essential elements of one challenged offense establish the essential elements of the other offense. *Id.* at 49. Under the actual evidence test, the evidence presented at trial is examined to determine whether each offense was proven by separate and distinct facts. *Id.* at 53. To prove a claim under the actual evidence test, the defendant must demonstrate a "reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Id.*

 Here, the jury was instructed that a person commits attempted fraud if the person, with the intent to defraud, attempts to obtain property by representing, without the consent of the credit card holder, that the person is the authorized holder of the credit card.[5] Record at 57, 79. In particular, the jury was instructed that it could find Trotter guilty of attempted fraud if it found that Trotter, acting with the specific intent to commit fraud, presented the Lazarus credit card to the sales associate for payment of merchandise without Miller's consent.[6] With regard to the theft, the jury was instructed that it could find Trotter guilty if it found he exerted unauthorized control over the property of another with the intent to deprive the other person of the property's value or use. The charging information for theft set forth the same allegations, except it specifically alleged that the property over which Trotter exercised unauthorized control was Miller's credit cards. The jury was also instructed that the term "unauthorized" meant "without the other person's consent." Record at 63. Accord-

ing to Trotter, there is a reasonable possibility that the evidentiary facts used by the jury to establish the substantial step for attempted fraud may have been used to establish the theft. We agree.

The substantial step alleged by the State for the charge of attempted fraud was Trotter's act of presenting the Lazarus credit card to the sales associate for payment of merchandise without Miller's consent. The jury was also instructed that it could find Trotter guilty of theft if it found he exerted control over Miller's credit card without his consent. Although the jury may have found Trotter guilty of theft of the Montgomery Wards or Bank One Master Card, there is a reasonable possibility that the jury focused on the Lazarus card.

Judgment affirmed in part and reversed in part and remanded to vacate the theft conviction.

SULLIVAN, J., and BAILEY, J., concur.

---

**5.** Trotter correctly notes that he was charged under subsection (C) of the fraud statute. Subsection (C) provides that a person who, with intent to defraud, obtains property by using, without consent, a credit card that was issued to another person commits fraud. However, the jury was instructed pursuant to subsection (D) which provides that a person who, with intent to defraud, obtains property by representing, without the consent of the credit card holder, that the person is the

authorized holder of the credit card. Therefore, we must analyze Trotter's argument under subsection (D).

**6.** "A person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime." IND.CODE § 35–41–5–1.