Donald LAWSON, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A05–9504–CR–130.

Court of Appeals of Indiana.

May 3, 1996.

Transfer Denied July 10, 1996.

Janet S. Dowling, Evans, Dowling & Youngcourt P.C., Indianapolis, for Appellant.

Pamela Carter, Attorney General, Christopher L. LaFuse, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

BARTEAU, Judge.

Donald Lawson appeals his conviction of murder, a Class A felony, and criminal recklessness, a Class D felony. Ten issues are presented, which we state as:

1. Whether the alternate juror participated in the jury deliberations, thus violating Lawson's right to be tried by a jury of twelve persons?

2. Whether the trial court erred in providing the jury with a video cassette recorder (VCR) and television set after deliberations had begun?

3. Whether the trial court abused its discretion by admitting a videotape into evidence?

4. Whether the trial court erred in denying Lawson's motion for a mistrial made after a juror question?

5. Whether Lawson's enhanced and consecutive sentence was manifestly unreasonable?

6. Whether the trial court's solicitation of juror questions amounts to fundamental error?

7. Whether the trial court erred in denying Lawson's motion for mistrial following an *ex parte* conversation between the trial judge and a member of the prosecutor's office?

8. Whether the trial court erred in denying Lawson's motion for continuance due to the State's late filing of its witness list?

9. Whether the trial court committed fundamental error by refusing to issue a bench warrant to procure a missing defense witness?

10. Whether the evidence was sufficient to support Lawson's conviction of murder?

### *FACTS*

Fred Mahone, driving a Chevrolet Celebrity, made a right-hand turn out of the Homestead Apartments onto west 34th Street between 7:30 p.m. and 8:00 p.m. on November 13, 1993. Gregory Martin was a passenger in the car driven by Mahone. Proceeding

west on 34th Street at the same time was Lawson, driving a full-size Chevy van.

Mahone turned onto 34th Street in front of Lawson's van. The proximity of Lawson's van at the time Mahone entered 34th Street is in dispute. Lawson testified that he had to slam on his brakes and swerve to avoid hitting the vehicle driven by Mahone. Martin testified that there was sufficient distance between Lawson's van and the vehicle Mahone was driving when Mahone made the turn.

Lawson continued driving behind Mahone's vehicle until they approached the intersection of 34th Street and Moller Road. At that point, the road widened to two lanes in each direction. Lawson pulled in the left hand lane and had a verbal confrontation with Mahone, who was in the right hand lane. Lawson then shot Mahone three times with a Glock 45 handgun. Mahone managed to turn the corner and accelerate, then lost consciousness. Martin was able to remove Mahone's foot from the accelerator and steer the car to a stop. Upon seeing Lawson's van approaching, he knocked Mahone to a prone position in the passenger seat and ducked to the floor. After the van went by, Martin drove the car to his apartment a few blocks away and called 911. Mahone was dead when emergency personnel arrived.

Police identified Lawson as a suspect because of distinctive markings on his van. Painted on the side of the van were marijuana leaves and the word "Cronic," a slang term for marijuana. At trial, Lawson did not deny shooting Mahone. Lawson asserted that he acted in self-defense after Mahone pointed a gun at Lawson and cocked the gun.

### PARTICIPATION OF ALTERNATE JUROR

■ The trial court permitted the alternate juror to be present during jury deliberations. After deliberations had commenced, the trial court received a note, signed by the alternate juror, requesting a television set with which to replay a videotape.

Lawson asserts that the written request for a television set signed by the alternate juror demonstrates that the alternate juror impermissibly participated in deliberations, creating a jury of thirteen persons, and thereby violating Lawson's constitutional and statutory right to have his case decided by a jury of twelve.

■ It is generally recognized that the right to a "trial by jury" contemplated by both the United States Constitution and the Indiana Constitution is the right to a trial by a jury of twelve persons. See U.S. v. Virginia Erection Corporation, 335 F.2d 868, 870 (4th Cir.1964); U.S. v. Kaminski, 692 F.2d 505, 518 (8th Cir.1982); Benadum v. State, 182 Ind. 510, 513, 107 N.E. 8, 9 (1914); Hill v. State, 173 Ind.App. 232, 237, 363 N.E.2d 1010, 1013 (1977). Indiana further provides a statutory right to a trial by a jury of twelve in a murder prosecution. Ind.Code § 35–37–1–1, § 1(b)(1) (West 1986). Thus, Lawson was deprived of his right to a trial by a jury of twelve if the alternate juror participated in deliberations.

Lawson contends that the alternate juror's act of writing and signing a note requesting that a television be provided to the jury clearly establishes that the alternate juror participated in deliberations. The State responds that these facts are equally susceptible to the conclusion that the jury asked the alternate to perform a ministerial task because the alternate was not participating in deliberations and was therefore otherwise unoccupied.

A review of the circumstances surrounding submission of the note by the alternate juror does not support Lawson's contention that the alternate juror participated in deliberations. At the same time the court received the alternate juror's signed request for a television set to view the videotape, the court also received another note from the jury listing five questions it wished to have answered. This note was not signed. The trial court proposed bringing the jury back into open court and rereading the instruction informing the jury of the correct procedure for communicating with the court (i.e. note signed by jury foreperson) and rereading the alternate juror instruction. Lawson did not object to this procedure. The jurors were twice instructed on the limited role of the alternate juror:

Mr./Ms./Mrs./Miss <u>Meyer,</u> you are the alternate juror in this case. You may accompany the jury to the jury room during deliberations. However, until you are designated as a replacement for another juror in open court, you may not take part in deliberations. You must listen attentively to the deliberations and by doing so be prepared to provide your view if called to do so.

R. 106. Also, both verdict forms contained a section separate from the verdict, with its own signature line, that provided "I hereby certify that the alternate has not taken part in the jury deliberations." R. 108–09. This section was signed by the jury foreperson.

■ A juror is presumed to have followed the instruction of the court. *Vega v. State,* 656 N.E.2d 497, 502 (Ind.Ct.App.1995), *reh'g denied, trans. denied.* And, contrary to Lawson's assertions, there is no indication that the jury and the alternate juror did not follow the court's instruction concerning alternate juror participation in deliberations. The alternate's written request was for a television set to enable the jury to view a videotape. It was not an evidentiary question. On the other hand, the note submitted at the same time contained several evidentiary questions, but was not signed. The fact that the two notes were submitted at the same time, with one involving evidentiary matters and the other not, does not support Lawson's contention that the alternate juror participated in deliberations. Had the alternate been an active participant as alleged, there would be no reason for two notes to be submitted. This information, combined with the foreman's affirmation that the alternate juror did not participate in deliberations, negates any inference of impropriety arising from the alternate juror's request that the jury be provided with the means to view the videotape.

### REVIEW OF VIDEOTAPE DURING DELIBERATIONS

■ The trial court sent all of the exhibits, including a videotape in which Lawson's van appears, with the jury to the jury room. After deliberations had commenced, the jury sent a fourth note [1] to the trial court containing six questions, the last question being a request to see the videotape again. After a discussion with the parties, the trial court responded to the note from the jury:

> You will be provided the means to view the videotape again. However, you have heard all the evidence there is to hear in this case and you must rely on your memories in deliberations.

R. 1008. Lawson contends that the trial court erred in providing the jury with the means to view the videotape, relying on *Powell v. State,* 644 N.E.2d 855 (Ind.1994). In *Powell,* the jury, after deliberations had begun and over the defendant's objection, requested and received a tape recorder and three audiotapes of alleged drug transactions. In reversing Powell's conviction, our Supreme Court noted that it would be perfectly proper for a trial court to replay for the jury in open court either tapes of testimony or tapes that have been admitted into evidence, but that providing the jury with items after deliberation has begun, and not monitoring the use of the items, constituted error. *Id.* at 858. However, the court in *Powell* specifically noted that its holding was limited to cases in which additional materials were provided to the jury following the onset of deliberation, and did not encompass the question of what materials may be given to a jury *before* it has begun its deliberations. *Id.* at 857. Here, because the videotape was provided to the jury prior to beginning deliberations, the only question is whether providing them with the means to view the videotape constituted error.

In *Harris v. State,* our Supreme Court recently addressed a similar issue. 659 N.E.2d 522 (Ind.1995). Harris's video and audio taped confessions, which had been played for the jury in open court, were included over objection with the exhibits sent

1. The first two notes were the note signed by the alternate requesting a television to view the videotape and the unsigned note containing the five questions from the jury. The third note was an unsigned request to view the videotape. The trial court returned that note to the jury. The fourth note contained the original five questions along with the addition of the request to view the videotape again and was signed by the jury foreperson.

to the jury room. The jury, after deliberations had commenced, requested a transcript of the audio taped confession. Instead, the trial court, over objection, sent a tape player to the jury room because the transcript of the audio taped confession had not been entered into evidence. On appeal, Harris contended that sending the taped confessions and the tape player to the jury room was error because no one could know what use the jury might make of them and that undue influence might be placed upon the exhibits. *Id.* at 526. Harris's claim was rejected because he failed to allege how the exhibits prejudiced his case or were subject to improper use by the jury. The court further held that "there was little risk that the jury would misuse or give undue weight to these exhibits because the audio tapes had already been played in open court." *Id.* While the supreme court did not specifically address whether it was proper to send the tape player to the jury after deliberations had commenced, the court's apparent acceptance of this practice is significant. If the trial court has the discretion to send video or audio taped exhibits to the jury room prior to deliberations commencing, and there would be no impediment to the jury reviewing the exhibits if the proper equipment was already in place, we see no error in the trial court's merely providing the means to view an exhibit after deliberations have commenced.

### ADMISSION OF VIDEOTAPE

■ Lawson contends that the trial court erred in admitting the videotape into evidence because the marijuana leaf and the word "Cronic" appearing on the van were unduly prejudicial to Lawson's defense. The trial court granted Lawson's motion in limine preventing the State from referring to the unique design on Lawson's van, for fear the jury would presume Lawson to be a marijuana smoker and that he would be prejudiced by the presumption. When the State offered the videotape, Lawson objected because the design on the van was visible in the tape. The trial court overruled the objection, finding that the videotape did not overemphasize the design.

■ Lawson concedes that the videotape of the crime scene and his van were relevant, but contends that the prejudicial effect from the jury viewing the marijuana leaf and word "Cronic" outweighed the probative value of the tape. The trial court has broad discretion in ruling on the admissibility of evidence. *Mitchell v. State,* 557 N.E.2d 660, 665 (Ind.1990). Although relevant evidence is generally admissible, relevance, standing alone, does not dictate admissibility. *Butler v. State,* 647 N.E.2d 631, 634 (Ind. 1995). Indiana Rule of Evidence 403 states in part: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...." Thus, in determining whether the prejudicial effect of relevant evidence substantially outweighs its probative value, the trial court must apply a balancing test. *Hardin v. State,* 611 N.E.2d 123, 128 (Ind.1993).

Lawson claimed self-defense in the killing of Mahone. A key issue was whether Lawson, as he contends, shot Mahone while Lawson sat in the driver's seat, or if he leaned over into the passenger seat or extended his hand outside the van before shooting Mahone. The height and size of Lawson's van in relation to the size of the car driven by Mahone were extremely relevant to this issue. Also, the shell casings were found in the street, even though Lawson's gun ejected casings to the right and rear. Thus, the videotape allowed the jury to determine whether Lawson could have fired the gun from the position he claimed, and still have the casings eject onto the street. The videotape did briefly focus on the marijuana leaf and the word "Cronic," and if the jury recognized the picture and word for what they were, then the inference could have been drawn that Lawson was a marijuana user. However, because of the relevance of the van to Lawson's self-defense claim, we cannot say that the risk of the jury possibly making such an inference substantially outweighs the probative value of the videotape. Thus, we cannot say the trial court erred in permitting the State to introduce the videotape.

### DENIAL OF MOTION FOR MISTRIAL FOLLOWING JUROR QUESTION

The trial court permitted jurors to submit written questions following the testimony of

each witness. Following Lawson's testimony, one juror submitted the question "what does the word and graphic on the side of your van say and what is the meaning?" R. 917. The trial court did not ask Lawson the question and Lawson moved for a mistrial, which was denied. Lawson asserts that the juror's question demonstrated the prejudicial effect of the videotape and required a mistrial. This argument is in reality a reiteration of the above contention that the prejudicial impact of the jury viewing the graphic on the van outweighed its probative value. The fact that a juror asked about the graphic does not change our determination that the trial court did not err in allowing the jury to view the videotape. Thus, the trial court did not err in denying the motion for mistrial.

## SENTENCE

The trial court imposed a fifty-year sentence for murder, to be served consecutively to a three-year sentence for criminal recklessness. Lawson contends that the trial court failed to consider significant mitigating factors in imposing this enhanced sentence.

The only mitigator found by the trial court was that Lawson supported his wife and three children. Lawson claims that the trial court ignored other mitigating factors such as Lawson's limited criminal history, his graduation from high school and his gainful employment. Also, Lawson asserts the trial court erred in not considering numerous letters submitted on his behalf.

■ While the trial court must consider the evidence of mitigating factors presented by a defendant, a finding of mitigating circumstances is not mandatory, but rather lies within the trial court's discretion. *Middlebrook v. State*, 593 N.E.2d 212, 214 (Ind. Ct.App.1992). Further, the trial court is not required to make an affirmative finding expressly negating each potentially mitigating circumstance. *Id.* As long as the aggravating circumstances are adequate to support an enhanced sentence, the trial court will not be presumed to have overlooked or failed to consider circumstances that the defendant claimed were mitigating simply because it failed to itemize them. *Id.*

■ The trial court found two aggravating factors, the first being the nature of the crime and the second that imposition of a reduced sentence would depreciate the seriousness of the crime. The second aggravating factor is only relevant to a trial court's decision not to impose a reduced sentence. *Shackelford v. State*, 622 N.E.2d 1340, 1346 (Ind.Ct.App.1993). Thus, the only valid aggravator was the nature of the crime.

■ When a trial court finds aggravating or mitigating circumstances, it must provide a statement of reasons underlying the sentence imposed. *Moore v. State*, 569 N.E.2d 695, 699 (Ind.Ct.App.1991), *trans. denied.* "The explanation cannot merely recite the statutory factors, but must relate in some detail the facts peculiar to the defendant and the crime—thereby assuring the sentence was fair and reasonable." *Id.*

■ In discussing the nature of the crime as an aggravating factor, the court noted:

This—and the nature of this crime was it was a traffic confrontation that happens daily in our society and shouldn't lead to this kind of behavior. Mr. Lawson used a Glock forty-five with Talon bullets, a weapon that is not for defensive purposes, but is to aggressively kill another human being. And the evidence reflects that Mr. Lawson's claim of self-defense is not supported even if Mr. Mahone had a weapon, Mr. Lawson had an opportunity to leave that situation and extricate himself from that situation. However, he stayed there and cocked his gun and shot his victim with those Talon bullets.

R. 1142–43. The trial court's recitation adequately supports its determination that the nature of the crime was an aggravating circumstance. Only one valid aggravating factor need be shown to sustain the enhancement of a presumptive sentence and mitigating factors are not a mandatory consideration in sentencing. *Concepcion v. State*, 567 N.E.2d 784, 791 (Ind.1991). Thus, we cannot say the trial court erred in imposing an enhanced sentence.

## JUROR QUESTIONS

■ Indiana Evidence Rule 614(d) provides:

(d) **Interrogation by Juror.** A juror may be permitted to propound questions to a witness by submitting them in writing to the judge, who will decide whether to submit the questions to the witness for answer, subject to the objections of the parties, which may be made at the time or at the next available opportunity when the jury is not present. Once the court has ruled upon the appropriateness of the written questions, it must then rule upon the objections, if any, of the parties prior to submission of the questions to the witness.

Through preliminary instruction, the trial court informed the jury that Indiana Evidence Rule 614(d) permitted the jury to submit questions to witnesses. R. 84. During trial, the trial court asked the jury if it had any questions prior to excusing each witness. The trial court and counsel would examine any jury questions, counsel would have an opportunity to object, and the court would determine whether to submit the question to the witness. Lawson contends that the trial court's solicitation of jury questions was fundamental error entitling him to a new trial because permitting the jury to participate by submitting questions altered the jury's role as neutral factfinders.

The concept of jury questions did not originate with the Indiana Rules of Evidence. Indiana has long recognized that jurors have a right to submit questions, *Carter v. State,* 250 Ind. 13, 15, 234 N.E.2d 650, 652 (1968), and that instructing the jury to the contrary is reversible error. *Dolezal v. Goode,* 433 N.E.2d 828, 834 (Ind.Ct.App.1982). While recognizing the jury's right to submit questions, courts have also cautioned against encouraging this practice. *Cherry v. State,* 258 Ind. 298, 300, 280 N.E.2d 818, 820 (1972); *Stancombe v. State,* 605 N.E.2d 251, 253 (Ind.Ct.App.1992) (extensive examination of Indiana cases on jury questions). While prior case law has discouraged trial courts from actively inviting questions or informing the jury of its option to ask questions, we find it significant that the supreme court chose to provide for jury questions in the Indiana

Rules of Evidence. Neither the federal nor the uniform rules contain an equivalent of Indiana's Rule 614(d). Thus, we must assume that inclusion of this provision in the Indiana Rules of Evidence was purposeful. Also, Rule 614(d) establishes, for the first time, the steps a trial court should follow when faced with jury questions, a void that was noted in *Stancombe.* It seems incongruous that the supreme court would explicitly provide for jury questions, outline a procedure to be followed when questions arise, and yet at the same time not intend that the jury be informed of the right to submit questions or offered the opportunity to submit questions. While solicitation of jury questions was discouraged under prior case law, given the inclusion of the jury question provision in the Indiana Rules of Evidence, we are not persuaded that a trial court does not have the discretion to incorporate a jury question procedure into a trial. Thus, Lawson's contention that the jury question procedure amounted to fundamental error must fail.

## EX PARTE COMMUNICATION

■ After the close of evidence, but prior to closing argument, a deputy prosecutor, not involved in Lawson's prosecution, engaged the trial judge in conversation and informed her that the victim was his cousin. When court reconvened, Lawson moved for a mistrial based on the *ex parte* communication. The trial judge denied the motion for mistrial.

Lawson contends that his motion for mistrial should have been granted because the *ex parte* communication violated the Code of Judicial Conduct and the Code of Professional Responsibility, occurred at a time when significant proceedings remained, and destroyed the appearance of impartiality.

Indiana Code of Judicial Conduct Canon 3(E)(1) provides:

A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:

(a) the judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed

evidentiary facts concerning the proceeding;

(b) the judge served as a lawyer in the matter in controversy, or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter; or the judge has been a material witness concerning it;

(c) the judge knows that he or she, individually or as a fiduciary, or the judge's spouse, parent or child wherever residing, or any person residing in the judge's household, has an economic interest in the subject matter in controversy or in a party to the proceeding or has any other interest which is more than de minimis that could be substantially affected by the proceeding, or

(d) the judge or the judge's spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person, or a person residing in the judge's household:

(i) is a party to the proceeding, or an officer, director or trustee of a party;

(ii) is acting as a lawyer in the proceeding;

(iii) is known by the judge to have a more than de minimis interest that could be substantially affected by the proceeding; or

(iv) is to the judge's knowledge likely to be a material witness in the proceeding.

Canon 3(E)(1) delineates certain instances where a judge's disqualification is mandatory. The conversation between the trial judge and the deputy prosecutor does not fall within one of the mandatory disqualification criteria. Thus, whether the "judge's impartiality might reasonably be questioned" because of the events that occurred is a subjective determination. The question is not whether the content of the conversation was prejudicial, but whether it had any impact upon the judge's impartiality, which is a question only the trial judge can answer. *Austin v. State,* 528 N.E.2d 792, 794 (Ind.Ct.App.1988). Here, defense counsel alerted the trial judge that he considered the conversation inappropriate and believed the trial judge's impartiality had been compromised. The trial court disagreed and refused to disqualify

herself. We assume, absent any evidence to the contrary, that the trial judge would have disqualified herself had there been any reasonable question concerning her impartiality. *Id.*

■■■ We accord the trial court's determination of whether to grant a mistrial great deference because the it is in the best position to evaluate the relevant circumstances of an event and its impact on the jury. *Bradley v. State,* 649 N.E.2d 100, 107 (Ind.1995), *reh'g denied.* To prevail on appeal from the denial of a motion for mistrial, the appellant must demonstrate that the conduct in question was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected. *Id.* Because Lawson has not identified any actual bias or impartiality demonstrated by the trial judge as a result of the judge's conversation with the deputy prosecutor, he has failed to establish grave peril.

### DENIAL OF MOTION FOR CONTINUANCE

■■ At a pre-trial conference on March 8, 1994, the trial court ordered both parties to file a witness list by March 9, 1994. The State did not file its list until March 10, 1994, one day late. Lawson's case went to trial on March 14, 1994. Prior to trial, Lawson sought a continuance because of the number of persons identified on the State's witness list, the absence of addresses for the individuals listed, and the late filing of the witness list. The trial court denied the motion for continuance.

Lawson contends that the late filing of the witness list prejudiced him in the preparation of his defense. Lawson asserts that due to the untimeliness of the filing he was unable to locate or interview four witnesses and unable to conduct further investigation of information derived from his interview of two of the witnesses.

■■■ Generally, continuances to allow for preparation are not favored without a showing of good cause and will be granted only in the furtherance of justice. *Baxter v. State,* 522 N.E.2d 362, 366 (Ind.1988), *reh'g. denied, cert. denied,* 501 U.S. 1255, 111 S.Ct.

2900, 115 L.Ed.2d 1064 (1991). The trial court has discretion regarding the disposition of a motion for a continuance sought on non-statutory grounds and we review only for abuse of discretion. *Id.* "For the denial of a continuance to be reversible error, the defendant must demonstrate the prejudicial abuse of discretion by a specific showing that additional time would have aided the defense." *Vance v. State,* 640 N.E.2d 51, 55 (Ind.1994) (citing *Clark v. State,* 539 N.E.2d 9, 11 (Ind. 1989)).

Lawson has not made a specific showing that the granting of a continuance would have aided his defense. Lawson merely makes a general statement that he was prevented from interviewing the witnesses and conducting further investigation. Absent a showing that additional time would have generated something specifically of benefit to the defense, no abuse of discretion will be found.

### REFUSAL TO ISSUE BENCH WARRANT FOR ABSENT WITNESS

 Lawson contends that the trial court erred in refusing to issue a bench warrant for an absent witness. Defense counsel personally served the boyfriend of Tiffany Ackles with a subpoena for Ackles's appearance. Defense counsel served the subpoena at Ackles's residence. Ackles did not show up for trial, but her boyfriend called the court and informed the staff that Ackles was out of town and did not receive the subpoena. Defense counsel requested the court to issue a bench warrant for Ackles's appearance, and the trial court refused because defense counsel had not personally served Ackles with the subpoena and there was no evidence that she was intentionally avoiding the subpoena. Lawson claims that the trial court's refusal denied him his fundamental right, granted by the Sixth Amendment of the United States Constitution and Article I, Section 13, of the Indiana Constitution, to have compulsory process for obtaining witnesses in his favor.

However, we need not address whether the trial court's refusal to issue a bench warrant was error because Lawson has failed to allege any specific harm from the trial court's refusal. Lawson did not make an offer to prove what Ackles's testimony would be and does not enlighten us on appeal. Lawson merely makes a bald assertion that Ackles was a material defense witness. In order to establish reversible error based on the trial court's action, Lawson must make a showing as to the materiality of the witness's testimony. *Dillon v. State,* 448 N.E.2d 21, 26 (Ind.1983). By not making an offer to prove or otherwise indicate the nature of Ackles's testimony, Lawson has failed to establish any harm from the trial court's refusal to issue the bench warrant.

### SUFFICIENCY OF THE EVIDENCE

Our test for sufficiency of the evidence requires that we neither reweigh the evidence nor resolve questions of credibility. We look only to the evidence of probative value and the reasonable inferences to be drawn therefrom that support the verdict. *Jones v. State,* 589 N.E.2d 241, 242 (Ind. 1992).

Lawson contends the evidence was insufficient to support his conviction of the offense of murder. In support, Lawson merely presents his version of the events that resulted in Mahone's death. Essentially, Lawson is asking us to reweigh the evidence, an exercise we will not perform. Both versions of the incident were presented to the jury, which did not accept Lawson's version. This court is not a substitute for the trier of fact.

The convictions are affirmed.

SHARPNACK, C.J., and FRIEDLANDER, J., concur.