Kevin DOWDY, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A04–9507–CR–288.

Court of Appeals of Indiana.

Oct. 30, 1996.

Rehearing Denied Dec. 23, 1996.

Transfer Denied Feb. 26, 1997.

Patrick Stern, Indianapolis, for Appellant.

Pamela Carter, Attorney General of Indiana, Lisa M. Paunicka, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

DARDEN, Judge.

*STATEMENT OF THE CASE*

Kevin Dowdy appeals his conviction by

jury of two counts of robbery[1] as class C felonies, and his adjudication as an habitual offender.[2] We affirm.

## ISSUES

1. Whether the trial court erred in finding that evidence of Dowdy's 1982 robbery conviction would be admissible for impeachment purposes if Dowdy testified.

2. Whether the trial court erred in instructing the jurors that they would be able to submit questions to witnesses to clarify testimony.

3. Whether the trial court erred in refusing the jury's request to review a witness' testimony.

4. Whether there is sufficient evidence to support Dowdy's convictions.

## FACTS

On June 22, 1994, seventy year old John Taylor was leaving an auto parts store when Kevin Dowdy stopped him and asked him for assistance with a disabled vehicle. Taylor agreed to help Dowdy and drove him to a nearby apartment complex. Dowdy asked Taylor to give him the money to purchase a set of jumper cables. Taylor refused and checked the trunk of his car for cables. Dowdy took the keys to Taylor's car and continued to demand money. Further, Dowdy motioned toward his leg and asked Taylor if he wanted to see his weapon. Dowdy then grabbed Taylor's arm and told him, "You know I can pop you any time I want to." (R. 144). Taylor, who was worried for his safety, decided to give Dowdy some money in exchange for his car keys. As Taylor opened his wallet, Dowdy demanded all of Taylor's money. Taylor gave Dowdy his money, and Dowdy returned Taylor's car keys. Taylor then drove home and called the police.

Several months later, on October 31, 1994, Patrick Cooley was leaving a liquor store when Dowdy approached him and asked him for assistance with a disabled vehicle. Specifically, Dowdy told Cooley that the battery in his car was dead. Cooley did not have jumper cables, so he drove Dowdy to a near-

by service station. When the two men arrived at the service station, Dowdy asked Cooley to drive him home. On the way to Dowdy's house, Dowdy told Cooley that he had a one hundred dollar bill and that he wanted to compensate Cooley, but that he needed change. Dowdy asked Cooley how much change he had. Dowdy then asked Cooley to drive him to an automated teller machine so that Cooley could obtain change for him, and Cooley refused.

Thereafter, Dowdy asked Cooley to drive him to a friend's house. Cooley pulled over and told Dowdy that he would leave him there. Dowdy reached over to the steering wheel, turned off the car's ignition, and, in a threatening tone of voice, asked Cooley how much change he had. Cooley showed Dowdy the coins that he had in his pocket, and Dowdy responded that Cooley had "better stop bullshitting around with [him]." (R. 200). Dowdy then told Cooley, "I'm going to let you have it right here and now," and reached behind his back as if he was reaching for a weapon. (R. 201). Cooley removed nine dollars from his wallet, and Dowdy took it. Cooley then suggested that they go to Dowdy's friend's house. When they got to the friend's house, both men exited Cooley's car; however, Dowdy told Cooley that Cooley could not go into the house. Cooley said that he would wait for Dowdy, but Cooley returned to his car and drove away. Dowdy was subsequently convicted by jury of two counts of robbery as class C felonies, and adjudicated to be an habitual offender.

I. *Admissibility of 1982 Robbery Conviction for Impeachment Purposes*

Dowdy first argues that the trial court erred in finding that evidence of Dowdy's 1982 robbery conviction would be admissible for impeachment purposes if Dowdy testified. Specifically, Dowdy argues as follows:

Indiana Rules of Evidence 609(b) specifically adopts the Federal Rules of Evidence use of stale convictions for impeachment. Section (B) of 609 prohibits use of a conviction if, a period of more than ten (10) years has elapsed, unless the court determines,

---

**1.** Ind.Code 35–42–5–1.

**2.** Ind.Code 35–50–2–8.

in the interest of justice, the stale conviction may be used. The trial court only determined that the probative value of the 1982 robbery conviction outweighed the prejudicial effect. The appellant was prevented from testifying in his own behalf, as a result of the court's ruling, fearing the evidence of his 1982 robbery conviction being admitted by the State, arguing this case presents an ongoing pattern, would be simply to say that one who committed a similar crime more than a decade ago may now be guilty of doing it again. Because the trial court incorrectly rule[d] that the 1982 conviction was admissible under 609(B) without addressing the "interest of justice component" and chilling the appellant's fundamental right to testify, the conviction should be reversed.

Dowdy's Brief, p. 16–17.

We agree with Dowdy that the language of Ind.Evidence Rule 609(b) closely parallels that of Fed.Evidence Rule 609(b) regarding the admissibility and use of aged convictions to impeach a witness' testimony at trial. Although we are not bound by interpretations of the Federal Rules of Evidence, we do not hesitate to look to federal cases interpreting the rules for guidance when we are confronted with a similar issue.

■ A trial court's decision to admit evidence will not be reversed absent a showing of manifest abuse of the trial court's discretion resulting in the denial of a fair trial. *Christian–Hornaday v. State*, 649 N.E.2d 669, 670 (Ind.Ct.App.1995). Ind.Evidence Rule 609 provides in pertinent part as follows:

    **(a) General Rule.** For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime or an attempt of a crime shall be admitted but only if the crime committed or attempted is (1) murder, treason, rape, robbery, kidnapping, burglary, arson, criminal confinement or perjury; or (2) a crime involving dishonesty or false statement.

    **(b) Time Limit.** Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or, if the convic-

tion resulted in confinement of the witness then the date of the release of the witness from the confinement unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than ten years old as calculated herein is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

■ We observe that Evid.R. 609(b) is biased against admissibility. Specifically, it requires the party seeking to impeach with an aged conviction to show that the probative value of the evidence substantially outweighs its risk of unfair prejudice. *United States v. Estes*, 994 F.2d 147, 149 (5th Cir.1993). Further, the party seeking to overcome the Rule 609(b) presumption of exclusion must support the argument for probative value with specific facts and circumstances upon which the trial court may base a finding of admissibility.

■ Trial courts may consider a broad range of factors in balancing an aged conviction's probative value against the risk of unfair prejudice. Robert Lowell Miller, Jr., *Indiana Practice*, Vol. 13, § 609.202 at 171 (1991). We find useful and utilize herein the following five factors which the Seventh Circuit considers in balancing an aged conviction's probative value against the risk of unfair prejudice:

    (1) The impeachment value of the prior crime;

    (2) The point in time of the conviction and the witness' subsequent history;

    (3) The similarity between the past crime and the charged crime;

    (4) The importance of the defendant's testimony; and

    (5) The centrality of the credibility issue.

*United States v. Castor,* 937 F.2d 293, 298–99 (7th Cir.1991).[3]

■ Here, because Dowdy was charged with two counts of robbery, the impeachment value of his 1982 robbery conviction was very significant. Further, although Dowdy was convicted of robbery in 1982, he was not released from confinement for that conviction until 1983. Thus, for the purposes of Evid.R. 609(b), his release from confinement was 12 years before the March 1995 trial, and two years past the ten-year time limit imposed by the rule. As to Dowdy's subsequent criminal history, the record reveals that following the 1982 robbery conviction, Dowdy had a theft conviction in 1983, two theft convictions in 1991, and another theft conviction in 1992. In addition, Dowdy has had several additional arrests for theft and robbery.

Further, we find some similarity between the 1982 conviction and the robberies before us. Dowdy's pre-sentence report reveals that, in the 1982 robbery, Dowdy and a codefendant robbed two individuals who were taking them to a liquor store. In addition, Dowdy's testimony was important, and because the case came down to Dowdy's perception of the events against the victims' perception of the events, both Dowdy's testimony and that of other witnesses would have been central to the issue of credibility. Specifically, Dowdy contended that he had merely "tricked" the victims out of their money.

Based on these facts, we agree with the trial court that the probative value of Dowdy's 1982 robbery conviction substantially outweighed its prejudicial effect. Accordingly, the trial court did not err in finding that Dowdy's 1982 conviction would be admissible for impeachment purposes if Dowdy testified.

## II.  *Jury Instruction*

The trial court instructed the jury as follows:

**3.**  *Castor* cites these factors with respect to Fed.Evidence Rule 609(a) which provides in pertinent part as follows:
(a) **General Rule.** For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by the public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year

Instruction Number 15

Further, under the Indiana Rules of Evidence, the judge may allow jurors to submit questions to witnesses to clarify their testimony. You may do so in this case by putting your questions in writing and submitting them to the judge after the lawyers have completed their examination of the witness. The judge, after consulting with the lawyers, is solely responsible for determining whether the answers to any jurors questions are relevant to the issue of this trial and thus will be asked of the witness. If the judge determines the answer to any submitted question is relevant, the judge will then ask it of the witness.

(R. 72).

■ Dowdy argues that the trial court erred in giving this preliminary instruction. Because he failed to object to the instruction when it was given to the jury, Dowdy has waived appellate review of this issue. *See, Butler v. State,* 622 N.E.2d 1035 (Ind.Ct.App. 1993), *reh'g denied, trans. denied.*

■ Waiver notwithstanding, Dowdy's argument must fail. In *Lawson v. State,* 664 N.E.2d 773 (Ind.Ct.App.1996), *trans. denied,* the trial court gave a similar preliminary instruction. During trial, the court asked the jurors if they had any questions before excusing each witness. The trial court and counsel would examine any jury questions, counsel would have an opportunity to object, and the court would determine whether to submit the question to the witness. On appeal, Lawson contended that the trial court's solicitation of jury questions was fundamental error entitling him to a new trial because permitting the jury to participate by submitting questions altered the jury's role as neutral fact finders.

under the law under which the witness was convicted, *and the court determines that the probative value of admitting the evidence outweighs its prejudicial effect . . . .*
However, we agree with Judge Robert L. Miller, Jr., that "there is no reason to think the same factors would not be pertinent in balancing under Ind.Evid. Rule 609(b)." Robert Lowell Miller, Jr., *Indiana Practice,* Vol. 13, Sec. 609.202 at 171, n. 6 (1995).

We reviewed Ind.Evidence Rule 614(d) which provides as follows:

A juror may be permitted to propound questions to a witness by submitting them in writing to the judge, who will decide whether to submit the questions to the witness for answer, subject to the objections of the parties, which may be made at the time or at the next available opportunity when the jury is not present. Once the court has ruled upon the appropriateness of the written questions, it must then rule upon the objections, if any, of the parties prior to submissions of the questions to the witness.

We further noted that Indiana has long recognized that jurors have the right to submit questions, and that instructing jurors to the contrary is reversible error. *Id.* at 780. In addition, we observed that neither the federal nor the uniform rules of evidence contain an equivalent of Evid.R. 614(d), and found it significant that our supreme court chose to provide for jury questions in the Indiana Rules of Evidence. *Id.* We assumed that the inclusion of this provision in the Indiana Rules of Evidence was purposeful. *Id.*

Further, we found that it would be incongruous that the supreme court would explicitly provide for jury questions, outline a procedure to be followed when questions arise, and yet at the same time not intend that the jury be informed of the right to submit questions or offered the opportunity to submit questions. *Id.* Accordingly, we found that Lawson's contention that the jury procedure amounted to fundamental error had to fail. *Id.* It is axiomatic that if the procedure is not error, neither is an instruction on the procedure. Here, the trial court followed the exact same procedure as the *Lawson* court, and we hereby find that the court did not err in instructing jurors that they would be able to submit questions to witnesses to clarify testimony.

Dowdy further argues that the trial court erred when, after giving Jury Instruction Number 15, the court refused to propound one of the juror's questions to a witness. Specifically, Dowdy argues as follows: "The question raised by the juror was directed to the testimony of officer Grant, and. should have been answered since the jurors had been told their questions would be ask[ed] if relevant to the issues of the trial." Dowdy's Brief, p. 21.

■ Evid.R. 614(d) provides that a juror "may" be permitted to propound a question. Thus, as with earlier Indiana law, whether to propound a juror's question to the witness rests within the trial court's discretion. Robert Lowell Miller, Jr., *Indiana Practice*, Vol. 13, § 614.401 at. 274 (1995). *See, Carter v. State,* 250 Ind. 13, 234 N.E.2d 650, 652 (1968).

■ Here, State's witness Officer George Grant testified that Cooley had identified Dowdy from a photographic array. At the conclusion of Grant's testimony, the trial court received the following question from a juror:

Has defendant been charged previously with these same charges as he is now charged? If not why is his photo and fingerprints on file.

(R. 243). Outside the jury's presence, the trial court determined that the question was improper, and Dowdy agreed. Accordingly, the trial court determined that it would not propound the question to Grant. We agree with the State that a "response would have been prejudicial to the Defendant because he had been convicted of robbery in 1982 and theft in 1992." State's Brief, p. 9. Further, in his reply brief, Dowdy concedes that "[t]o have allowed the question certainly would have prejudiced [Dowdy's] fair trial rights." Dowdy's Reply Brief, p. 6. The trial court did not abuse its discretion by refusing to propound the juror's question to witness Grant.

III. *Request to Review Witness' Testimony*

■ During deliberations, the jury sent the trial judge a note which stated: "Need to review testimony of Mr. Cooley." (R. 107). In the presence of the deputy prosecutor, defense counsel and Dowdy, the trial court stated that it would reject the request because the request did not reflect a disagreement about the testimony. The trial court then responded as follows to the jury: "You

have heard all evidence there is to hear in this case. You must rely on your memories of the evidence." (R. 107). Dowdy approved the trial court's response. However, Dowdy now argues that the "trial court committed error when admonishing the jury without complying with mandatory provisions of [Ind. Code 34–1–21–6]." Dowdy's Brief, p. 21.

First, as the State points out, because Dowdy approved the trial court's response to the jury, the alleged error is not available on appeal. *See, Cade v. State,* 590 N.E.2d 624 (Ind.Ct.App.1992). Unavailability notwithstanding, Dowdy's argument must fail. I.C. 34–1–21–6 provides as follows:

> After the jury have retired for deliberation, if there is a disagreement between them as to any part of the testimony, or if they desire to be informed as to any point of law arising in the case, they may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or their attorneys.

This court has previously construed I.C. 34–1–21–6 to require the trial court to read any properly admitted testimony to the jury when the jury expresses disagreement regarding the testimony. *Kiner v. State,* 643 N.E.2d 950, 955 (Ind.Ct.App.1994), *reh'g denied.* However, "[u]nless the jury manifests disagreement about the testimony or seeks clarification on legal issues, the trial court is under no duty to respond to the jury's request." *Grayson v. State,* 593 N.E.2d 1200, 1206 (Ind.Ct.App.1992). Here, the jury asked to review Cooley's testimony. There is nothing in the request which suggests that the jurors disagreed about the testimony. Further, the jurors did not ask to be informed on any point of law. Thus, I.C. 34–1–21–6 in not applicable. *See Grayson.*

We further note that Dowdy has directed us to *Brownlee v. State,* 555 N.E.2d 505 (Ind.Ct.App.1990) to support his contention of error. In *Brownlee,* the jury sent a note to the trial court stating that two of the jurors had been unable to hear the tape of an alibi witness' testimony. Without informing or consulting the parties, the trial court responded, "No." On appeal, this court found that because he had not been informed of the jury's request, Brownlee had been denied the opportunity to request clarification and determine if disagreement existed which would have required the testimony to be reread. Accordingly, this court reversed Brownlee's conviction and remanded the case for a new trial. However, the facts before us are distinguishable from those in *Brownlee* because Dowdy and his counsel were informed of the jury's note and consented to the trial court's response. We find no error.

### IV. *Sufficiency*

■ Our standard of review for sufficiency of the evidence is well-settled. We will neither reweigh the evidence nor judge the credibility of witnesses. We examine only the evidence most favorable to the judgment along with all reasonable inferences to be drawn therefrom, and, if there is substantial evidence of probative value to support the conviction, it will not be set aside. *Geans v. State,* 623 N.E.2d 435, 437 (Ind.Ct.App. 1993).

Ind.Code 35–42–5–1 provides in pertinent part as follows:

> A person who knowingly or intentionally takes property from another person or from the presence of another person:
>
> (1) By using or threatening the use of force on any person; or
>
> (2) By putting any person in fear;
>
> commits robbery, a Class C felony.

■ Dowdy argues that there is insufficient evidence to support his robbery convictions. Specifically, Dowdy argues that there is insufficient evidence of threat of force or fear. We disagree.

Our supreme court has previously stated as follows:

> This Court has long recognized that the particular degree of force necessary to constitute robbery is not defined by statute or the common law. We have held that the degree of force used to constitute the crime of robbery has to be a greater degree of force than would be necessary to take possession of the victim's property if no resistance was offered and that there

must be enough force to constitute violence. The nature of the threatened force is not material in the definition of robbery as a Class C felony and any threat of force, conveyed by word or gesture will suffice.

*Kimp v. State,* 546 N.E.2d 1193, 1196–97 (Ind.1989), *trans. denied,* (quoting *Maul v. State,* 467 N.E.2d 1197, 1199 (Ind.1984)).

In the *Kimp* case, Kimp argued that there was insufficient evidence to support his class C felony robbery conviction because the State had failed to prove the element of threat of force. Our review of the record revealed that Kimp entered a grocery store, approached a cashier and ordered her to "put all the money in a bag or you're dead." *Kimp,* 546 N.E.2d at 1197. At trial, the cashier testified that Kimp had his hand in his pocket and was pointing something at her from inside the pocket. The cashier further stated that she had complied with Kimp's demand because she "didn't want to be dead." *Id.* Our supreme court found sufficient evidence to support Kimp's conviction.

Here, our review of the record reveals that when Taylor refused Dowdy's demands for money, Dowdy threatened to show Taylor his weapon. Dowdy then grabbed Taylor's arm and stated, "You know I can pop you any time I want to." (R. 144). According to Taylor, he was worried for his safety. Further, when Cooley responded to Dowdy's request that Cooley show him how much change he had, Dowdy told Cooley that Cooley had "better stop bullshitting around with [him]." (R. 200). Dowdy then told Cooley, "I'm going to let you have it right here and now," and reached behind his back as if he was reaching for a weapon. (R. 210). Cooley "panicked" and was "pretty afraid that [he] was going to get hurt." (R. 200).

There is sufficient evidence to show that Dowdy both threatened the use of force and placed Taylor and Cooley in fear. Accordingly, there is sufficient evidence to support Dowdy's convictions of robbery.

Affirmed.

ROBERTSON, J., concurs.

RILEY, J., dissents with separate opinion.

RILEY, Judge, dissenting.

I respectfully dissent. Ind.Evid.R. 609(b) is biased against admitting convictions of more than ten years unless the probative value of the conviction substantially outweighs its prejudicial effect. The State did not overcome the presumption of inadmissibility.

The party seeking to overcome the presumption of exclusion must support the argument for probative value with specific facts and circumstances upon which the trial court may base a finding of admissibility. Ind. Evid.R. 609(b). The State in its argument before the trial court on the day of trial supported its argument for admissibility by saying that:

> The State would use this evidence only for impeachment just to go against his credibility; not to argue that once a robber, always a robber ... However, my argument was that, I thought, perhaps this Rule is there because the Court believes that a person may rehabilitate if he was only 18 at the time and hasn't done anything since, then it shouldn't reflect on his credibility now. However, we've got two other convictions afterwards. That, that's what my argument is ... *Ashton v. Anderson,* the court went back to civil law to determine which crimes had rendered witnesses incompetent witnesses. And those crimes were robbery, rape, murder, burglary; those type of crimes ... And 609 starts with that general rule.

(Supp.R.23–25).

There is no evidence of exceptional circumstances justifying the admission of the prior conviction. In fact, because the prior conviction was for a robbery conducted under similar circumstances, there was an increased danger that the jury would not view it solely as evidence of credibility. Hence, there was an increased risk of prejudice that reduced the probative value of the twelve year old conviction.

The Senate Judiciary Committee in construing subsection (b) of Rule 609 stated:

> It is intended that convictions over ten years old will be admitted very rarely and only in exceptional circumstances. The

rules provide that the decision be supported by specific facts and circumstances thus requiring the court to make specific findings on the record as to the particular facts and circumstances it has considered in determining that the probative value of the conviction substantially outweighs its prejudicial impact.

10 James W. Moore et al., Moore's Federal Practice Sec. 609.23 (2d ed. 1996).

The trial court made no such findings. The Committee went on to say:

It is expected that, in fairness, the court will give the party against whom the conviction is introduced a full and adequate opportunity to contest its admission.

*Id.*

The State of Indiana filed its Notice of Intent to Use Prior Conviction and Motion in Limine on the day of trial. The hearing on the motions was held prior to the commencement of trial on the same day it was filed. It is clear that the drafters of the rule specifically required sufficient *advance* notice. I cannot hold that notice is sufficient when given on the day of trial. Advance written notice must be given, sufficient to allow the adversary to challenge the conviction's admissibility, of an intent to use an aged conviction for impeachment purposes, Ind.Evid.R. 609(b). *United States v. Pritchard,* 973 F.2d 905, 908 n. 3 (11th Cir.1992).

The danger in admitting convictions of more than ten years is that while their probative value is limited, their prejudicial effect remains. I would reverse the conviction.