**Brian K. ASHBA, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 06A01–0310–CR–383.**

Court of Appeals of Indiana.

May 18, 2004.

Deborah K. Smith, Thorntown, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

This is a case of first impression in Indiana, the question being what is the proper procedure for posing questions from the jury to a witness? Though beginning January 1, 2003, our Rules of Trial Procedure required trial judges to instruct jurors that they may seek to pose questions to witnesses, the proper procedure for conducting such questioning has not yet been addressed.

Brian K. Ashba appeals his conviction for Operating While Intoxicated (OWI), a class D felony.[1] Specifically, Ashba claims that the trial court committed reversible error when it did not allow jurors to ask questions at the close of each witness's testimony. Additionally, Ashba challenges the sufficiency of the evidence, claiming that the State failed to present evidence that he endangered another person or himself. Finally, Ashba contends that his three-year sentence is inappropriate in light of the nature of the offense and his character. Concluding that the trial

---

1. Ind.Code § 9–30–5–3.

court's procedure was not reversible error, that sufficient evidence was presented by the State, and that no errors occurred in sentencing, we affirm.

### FACTS

The facts most favorable to the verdict reveal that on the evening of October 9, 2000, Boone County Sheriff Deputy Neil Randolph received a radio dispatch warning of a possible drunk driver. The dispatch described the vehicle involved as a silver or grey Chrysler proceeding northbound on State Road 421. Deputy Randolph drove to the reported location and spotted a car fitting the dispatch's description.

Deputy Randolph followed the vehicle and noticed that it "went from the center line back over to the fog line. Crossed the fog line." Tr. p. 45. The vehicle gradually built up speed until it was traveling at approximately 70 miles per hour, all the while weaving to the center line and back to the fog line. Deputy Randolph activated his emergency lights, but the car continued to travel for about 500 yards before pulling into a residential driveway.

Deputy Randolph approached the vehicle and asked the driver—Ashba—for his license. Ashba told Deputy Randolph that he was on his way home to Kokomo and that he "had had a couple drinks." Tr. p. 54. Deputy Randolph detected a "pretty strong" odor of alcoholic beverage emanating from Ashba's vehicle. Tr. p. 54. Deputy Randolph observed that Ashba was "having trouble just getting his wallet" out to obtain his license. Tr. p. 54. Moreover, Ashba's words were slurred when he spoke.

Ashba emerged from his car. Because Ashba appeared like "he was gonna [sic] fall over," Deputy Randolph "leaned him up against the vehicle." Tr. p. 60. Deputy Randolph noticed that Ashba's eyes were "[b]lood shot and glassy." Tr. p. 61.

Deputy Randolph asked Ashba to perform some field sobriety tests, including the one-legged stand, but Ashba informed him that a knee injury precluded him from doing so. As a result, Deputy Randolph asked Ashba to perform the "finger test," whereby a subject touches his thumb to his remaining four fingers. Ashba declined to take the test. Deputy Randolph asked Ashba to perform an alcohol breath test, and Ashba finally agreed. After the test, Deputy Randolph read Ashba the Indiana implied consent warning and told Ashba that a chemical test could be administered at the county jail. Ashba refused to take the chemical test, whereupon Deputy Randolph placed him under arrest.

The State charged Ashba with operating a vehicle while intoxicated, a class A misdemeanor but then filed a notice of intent to enhance the charge to a class D felony because Ashba had been convicted of another OWI charge within the preceding five years. The State also charged Ashba with public intoxication, a class B misdemeanor.[2] At a trial commencing January 7, 2003, the trial court gave the jury the following preliminary instruction:

> When counsel have finished questioning the witnesses, if you feel there are substantial questions that should be asked, you will be given an opportunity to do so prior to that witness being excused.

Tr. p. 20.

"Please indicate to me if you have any questions." . . . inquiry

I'm going to look to you to see if you have any questions

OR I will specifically ask you after each witness

---

2. Ashba does not challenge this conviction.

May be clear to the jurors if they know how they will be given that opportunity

The trial proceeded without juror questions, and both parties presented their evidence. Before the jury retired to deliberate, the trial court met with counsel for both parties because the bailiff had informed the trial court that "there was more than one (1) juror this morning wondering if they were gonna [sic] have an opportunity to ask questions and that, to the Bailiff they appeared to be somewhat upset that they had not had that opportunity." Tr. p. 158. The trial court explained that during the presentation of the evidence he did not specifically ask jurors if they had questions but would "scan the jurors at the end of testimony by, by the witnesses, and just from an eye contact trying to check and see whether or not, you know, there were any questions." Tr. p. 158.

The trial court then went through a sheet of questions that had been given to the bailiff by Juror Number Six. The State asked that the questions not be read because it did not "see how at this point any questions can be asked once the case is closed." Tr. p. 160. Ashba's attorney agreed, stating that he would "join in with, with [the State's] objection to reopening . . . any evidence with the recognition that . . . we all could have done better." Tr. p. 161.

Concerned with the jury's apparent displeasure, the trial court told the jury that it had overruled the submitted questions. Moreover, the trial court noted that it "ran this trial improperly" because it was "the first trial in this county under the new jury rules." Appellant's App. p. 126. The trial court admitted that it did not "have any case law on how these things are handled" because of the rules' novelty. Appellant's App. p. 126. Finally, the trial court told the jury, "[I]f you are upset, I want you to

be upset with me. I don't want you to be upset with either the State's attorney or the defense attorney." Appellant's App. p. 126.

The trial court then asked the remaining jurors whether there were any other written questions, and Juror Numbers Five and Three tendered written questions. Outside of the presence of the jury, the trial court and counsel agreed that the questions would be overruled because the evidence had been closed. The jury retired and returned a guilty verdict on the charge of operating a vehicle while intoxicated. Thereafter, Ashba admitted to a prior conviction for OWI.

At sentencing, the trial court found—as aggravating circumstances—that Ashba had violated the conditions of his probation, that he had a history of criminal activity—including four prior OWI convictions—and that he was in need of treatment best provided by a penal facility. The lone mitigating circumstance found by the trial court was that imprisonment would create a hardship for Ashba's mother. The trial court concluded that the aggravators outweighed the mitigators and sentenced Ashba to three years in the Department of Correction. Ashba now appeals.

## DISCUSSION AND DECISION

### I. Jury Rule 20

Ashba first claims that the trial court erred in failing to ask the jurors whether they had any questions after each witness had finished testifying. Ashba argues that the "failure of the trial court to properly allow jurors an adequate opportunity to ask questions at the close of each witness['s testimony] effectively prevented implementation of the theory behind Jury Rule 20." Appellant's Br. p. 8.

Initially, we note that Jury Rule 20 became effective January 1, 2003. That rule reads, in relevant part:

> The court shall instruct the jury before opening statements by reading the appropriate instructions which shall include at least the following:
>
> . . .
>
> (7) that jurors may seek to ask questions of the witnesses by submission of questions in writing.

Jury Rule 20 does not specifically state the mechanical procedure to be used at trial in order to allow such jury questions. The prospect of jury questioning, however, is not new to Indiana. In *Lawson v. State*, the "the trial court asked the jury if it had any questions prior to excusing each witness. The trial court and counsel would examine any jury questions, counsel would have an opportunity to object, and the court would determine whether to submit the question to the witness." 664 N.E.2d 773, 780 (Ind.Ct.App.1996). On appeal, Lawson claimed that the jury's questioning amounted to fundamental error. *Id.* This court disagreed, noting that Indiana Rule of Evidence 614(d) specifically provided for interrogation by a juror. We noted that it would be "incongruous that the supreme court would explicitly provide for jury questions, outline a procedure to be followed when questions arise, and yet at the same time not intend that the jury be informed of the right to submit questions or offered the opportunity to submit questions." *Id.*

In addition to the new jury rules, we note that Rule 614(d) provides:

> A juror may be permitted to propound questions to a witness by submitting them in writing to the judge, who will decide whether to submit the questions to the witness for answer, subject to the objections of the parties, which may be made at the time or at the next available

opportunity when the jury is not present. Once the court has ruled upon the appropriateness of the written questions, it must then rule upon the objections, if any, of the parties prior to submission of the questions to the witness.

Thus, the Rule contemplates a written juror question submitted to the court. Subject to the parties' objections, the trial court may then, at its discretion, ask the witness the question. *Dowdy v. State*, 672 N.E.2d 948, 953 (Ind.Ct.App.1996).

■ We see no reason why the procedure approved by this court under Rule 614(d) cannot be used, likewise, under Jury Rule 20. Indeed, it seems that the trial court here attempted to do as much "just from an eye contact trying to check and see whether or not, you know, there were any questions." Tr. p. 158. Unlike the trial court in *Lawson*, though, the trial court in this case did not verbally ask the jurors if they had any questions to tender. Without the trial court's inquiry, the jurors may not have known when to offer their questions for the witnesses. Thus, under Jury Rule 20, the correct procedure is that which we approved of in *Lawson:* At the end of a witness's testimony and before the witness is excused, the trial court should verbally ask the jury if there are any questions for the witness. If a written question if offered by a juror, the trial court is to use its discretion—subject to the parties' objections—in determining whether the juror's question should be propounded to the witness.

We acknowledge that Jury Rule 20 may at times lengthen a trial. In no way do we advocate that a trial court wait an extended period of time for a juror to formulate his or her thoughts and write down a question after a witness has finished testifying. The object of juror questioning is to help juries "understand the facts and

discover the truth." *Trotter v. State,* 733 N.E.2d 527, 531 (Ind.Ct.App.2000). The search for the truth, however, should not detract the trial court from ensuring that justice is done expeditiously.

■ Here, it is evident that the trial court was faced with a novel situation and was unsure about the procedures to follow. Ashba, however, cannot complain that the trial court's actions constitute reversible error because he expressly joined the State's objections to the juror questions and agreed that they should not be given. Tr. p. 161, 177, 178. Invited error is not reversible error. *Poindexter v. State,* 664 N.E.2d 398, 401 (Ind.Ct.App.1996). Thus, Ashba's claim that he is entitled to a new trial on this basis must fail.

### II. Sufficiency of the Evidence

■ Ashba alleges that the State presented insufficient evidence. While Ashba acknowledges that he had a prior OWI conviction within five years of his current offense, Ashba argues that the State failed to show beyond a reasonable doubt that he endangered anyone.

When reviewing the sufficiency of the evidence, we neither reweigh the evidence nor determine the credibility of witnesses. *Kremer v. State,* 643 N.E.2d 357, 360 (Ind. Ct.App.1994). Rather, we look to the evidence most favorable to the verdict together with all reasonable inferences therefrom. *Id.* If there is substantial evidence of probative value to support the judgment, we will affirm. *Id.*

■ We note that to convict Ashba, the State had to demonstrate that (1) Ashba; (2) operated a vehicle; (3) while intoxicated; (4) in a manner that endangered a person. I.C. § 9–30–5–2(b). "The element of endangerment is proved by evidence that the defendant's condition or manner of operating the vehicle could have endangered any person, including the public, the police, or the defendant." *Weaver v. State,* 702 N.E.2d 750, 753 (Ind.Ct.App. 1998). Moreover, "[c]onvictions of operating while intoxicated may be supported by circumstantial evidence." *Kremer,* 643 N.E.2d at 360 (Ind.Ct.App.1994).

In *Weaver,* the defendant was convicted of OWI and, on direct appeal, argued that the State presented insufficient evidence of endangerment. We affirmed, noting that a police officer "observed Weaver's truck veer onto the center double yellow line with its front and rear left tires." *Weaver,* 702 N.E.2d at 753. Moreover, we noted that Weaver had exceeded the posted speed limit by approximately twenty miles per hour and had admitted to consuming alcohol. *Id.* The arresting officer noted that Weaver's speech was slurred, his eyes bloodshot, and his words were difficult to understand. *Id.* We concluded that "[t]his evidence and the reasonable inferences to be drawn therefrom support the jury's conclusion that Weaver's driving ability was impaired to an extent that endangered himself and/or others." *Id.*

Here, Ashba was driving at a speed of approximately 70 miles per hour and began weaving between the center and fog lines. Deputy Randolph testified that Ashba's speech was slurred and that his eyes were "[b]lood shot and glassy," Tr. p. 61. Ashba admitted to having "a couple drinks." Tr. p. 54, and Deputy Randolph detected the odor of alcohol from Ashba's vehicle. Ashba appeared as if "he was gonna [sic] fall over." Tr. p. 60. In sum, the State—as it did in *Weaver*—presented sufficient evidence to "support the jury's conclusion that [Ashba's] driving ability was impaired to an extent that endangered himself and/or others." *Id.*

### III. Sentencing

■ Ashba claims that the trial court's three-year sentence is inappropriate in

light of the nature of the offense and his character. Specifically, Ashba points out that his most recent OWI conviction was the predicate offense that raised his current OWI conviction to a class D felony. Thus, Ashba claims the trial court should not have used his most recent OWI conviction as an aggravator. Moreover, Ashba argues that a great amount of time had passed since his last criminal conviction and that he had been caring for his elderly mother. Thus, Ashba asks that this court reduce his sentence to the presumptive term of one and one-half years.

When sentencing a defendant, a trial court is to use the presumptive sentence as a "base line" in deciding a sentence. *Rodriguez v. State*, 785 N.E.2d 1169, 1179 (Ind.Ct.App.2003). When determining whether to deviate from the presumptive sentence, the trial court must then consider the factors listed in Indiana Code section 35–38–1–7.1(a), along with any discretionary factors found to exist. *Id.* We have noted that a defendant's prior criminal history is a significant factor to consider. *Id* The maximum sentence for a crime should be reserved for the "worst offenders." *Buchanan v. State*, 767 N.E.2d 967, 973 (Ind.2002).

Ashba correctly points out that "elements of the crime cannot be used to enhance a sentence." *Morgan v. State*, 675 N.E.2d 1067, 1073 (Ind.1996). Ashba's claim is unavailing, however, because the trial court found that Ashba had a "history of criminal activity," Sent. Tr. p. 39, a fact that is borne out by the pre-sentence investigation. Even if we were to assume that the trial court erroneously included Ashba's 1994 conviction in its reference to his "history of criminal activity," Sent. Tr. p. 39, Ashba had seven other previous alcohol-related offenses, including three prior OWI convictions. Appellant's App. p. 200–01. Indeed, Ashba has repeatedly had alcohol-related convictions and has committed offenses while on probation. Appellant's App. p. 201. In sum, with respect to alcohol-related crimes, he is among the "worst offenders." *Buchanan,* 767 N.E.2d at 973. Consequently, the trial court committed no error in sentencing Ashba to a three-year executed sentence.

## CONCLUSION

In light of the issues addressed, we conclude that Ashba is precluded from claiming that the trial court's failure to pose the jurors' questions was error because he invited such an error. Moreover, the State presented sufficient evidence to convict Ashba of OWI, and the trial court's sentence was appropriate.

The judgment of the trial court is affirmed.

FRIEDLANDER and BAILEY, JJ., concur.